# Louisville & Nashville Railroad Co. v. Stewart.

## *Action against Railroad Company to recover Damages for Personal Injuries.*

1. *Pleading and practice; sufficiency of judgment on demurrer.* The recital in a judgment entry that demurrers to designated pleadings "are by the court heard, considered and overruled," does not constitute a judgment upon said demurrers, and such rulings upon the demurrers will not be reviewed on appeal.

2. *Action against railroad company for personal injuries; admissibility of evidence.*—In an action against a railroad company to recover damages for personal injuries, where it was shown that the accident complained of occurred while the plaintiff was trying to cross the tracks of the defendant at a public crossing in a city, where there were many railroad tracks, and the plaintiff testified that before starting across the tracks the watchman stationed by the defendant gave the signal of safety, indicating that she could go across, it is admissible to prove as to what tracks the watchman was accustomed to attend, and as to what opportunities street travellers had of knowing the movements of trains at said street crossing.

3. *Same; same.*—In such a case, where there is evidence tending to show that just before the plaintiff met with the accident resulting in the injury complained of, and while she was riding along the street crossing on a bicycle, a passenger train was going across the street, and it was necessary for the plaintiff to accelerate the speed at which she was riding to prevent a collision with said train, the rate of speed at which the passenger train was running and the movements thereof, constitute a part of the *res gestae* of the accident, are proper to be proved and considered

as bearing on the question of contributory negligence.

4. *Same; same; expert testimony.*—In an action against a railroad company to recover damages for personal injuries, where the rate of speed of the train is one of the issues involved in the case, a witness who is not shown to be an expert may testify as to the speed of such train, based upon the observations made on running trains.

5. *Same; same; competency of non-expert testifying to physical condition of person.*—In an action to recover damages for personal injuries, it is competent for a person who, though not a physician or expert, has been with the person injured, to testify as matter of fact, to the physical condition of such person.

6. *Witness; evidence of expert.*—The opinion of a physician being examined as an expert witness, may be based upon facts of what the witness has actual knowledge, as well as upon abstract hypothesis; and it is not a valid objection to the physician's opinion concerning cause and effect of disease and injury that it asumes the form of a conclusion.

7. *Admissibility of evidence; general objection.*—Where testimony is not plainly irrelevant, the court will not be put in error for overruling a mere general objection thereto.

8. *Action for personal injuries; contributory negligence; charge of court to jury.*—In an action to recover damages for personal injuries, where it is shown that the injuries complained of were sustained while the plaintiff was riding a bicycle along the street crossing in a city which was intersected by several railroad tracks, and that just before the accident she came near being run over by an approaching train while crossing another track, a charge is properly refused which instructs the jury as follows: "Contributory negligence would not be chargeable to the plaintiff if you believe from the evidence that defendant's watchman invited her to cross that track, and that while so attempting to cross, it became suddenly and without warning apparent that she was in danger from an approaching train, if after that she acted wildly under the influence of fright occasioned by said danger or apparent danger."

9. *Same; same; same.*—In such a case, a charge is properly refused which instructs the jury as follows: "In determining from the evidence whether the plaintiff had time and opportunity to exercise reasonable diligence to protect herself from any and all danger to be apprehended in crossing such other tracks yet to be crossed and whether she could have stopped and looked and listened before under-

[Louisville & Nashville Railroad Co. v. Stewart.]

taking to cross such other tracks, if you believe from the
evidence that she was crossing defendant's tracks by invi-
tation of defendant's watchman, I charge you that if the
evidence shows that there was sudden danger or apparent
danger confronting plaintiff, and she acted wildly, under such
circumstances she would not be charged with contributory
negligence therefor."

10. *Same; same; same.*—In such case, a charge which instructs
the jury that they "must consider all the circumstances sur-
rounding the plaintiff at the time of and immediately be-
fore her alleged injury in determining what would be rea-
sonable and competent," asserts a correct proposition and
is properly given at the request of the plaintiff.

11. *Same; same; same.*—In such case, a charge is properly re-
fused as being misleading which instructs the jury that
"Considering the ease of dismounting and the control of
the rider over his instrument, a bicycler must, under all
ordinary circumstances, be treated as subject to the same
rules as a pedestrian; he must stop, look and listen before
attempting to cross a railroad track."

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

This was an action brought by Mrs. A. M. Stewart
against the Louisville & Nashville Railroad Company,
to recover damages for personal injuries sustained by
the plaintiff while riding a bicycle, which injuries were
alleged to have been caused by reason of the negligence
of the defendant or its employés.

The complaint, as originally filed, contained eleven
counts; a twelfth count being added by way of
amendment.    Demurrers were    sustained  to  the
first count, and on motion of the plaintiff, the
court struck the ninth count.    The court, at
the written request of the defendant, gave the
general affirmative charge as to the third, fifth,
tenth and eleventh counts.   In the second count the
plaintiff alleges that while in the act of crossing Eight-
eenth street, a public highway, much traveled by both
pedestrians and vehicles, said street being crossed at
a grade by a railroad track of the defendant, she was
run into and injured by a switch engine. The specific
act of negligence averred in this count is "that said

negligence consisted in running said cars and said locomotive at too great a rate of speed."

The negligence averred in the fourth count, on the same state of facts as above set out, is "that said negligence consisted in running said cars and locomotive across Eighteenth street crossing without taking proper precautions to prevent injuries to plaintiff."

The sixth count is based upon the alleged violation of a section of the city code of Birmingham, providing, under a penalty, that railroads operating tracks over certain named crossings, among them Eighteenth street crossing, keep electric lights burning all night, and watchmen or flagmen on guard day and night. The negligence averred in this count is "that said violation of said section consisted in not keeping a watchman or flagman on guard at Eighteenth street crossing at the time plaintiff was struck as aforesaid."

The seventh count avers that a section of the city code of Birmingham providing that it shall be the duty of flagmen placed at railroad crossings to at all times remain in full view of persons approaching said crossings, whether they be approaching on foot or in vehicles, and to signal them to pass over if they can do so, or to stop if a train is too near to admit of safe passage, was violated by the defendant, and that said violation of said section "consisted in defendant's flagman at said crossing not duly and properly signalling said defendant to stop when said locomotive and cars were approaching too near to admit of a safe passage.

The eighth count, as amended to meet the demurrers of the defendant, is based on the alleged violation of a section of the city code of Birmingham providing, that no railroad company shall run any locomotive at a rate of speed greater than eight miles per hour when going forward, or four miles per hour while going backward, or without a headlight thereon, or without giving the proper signals by ringing the bell, etc. The plaintiff averred that the defendant violated this section by "running a locomotive engine within the city limits at and over said crossing at a greater rate of speed than four miles an hour when running back-

wards; and that said locomotive engine was running backward at said time and place at a greater rate of speed than four miles per hour."

The twelfth count is based on the alleged violation of the section above mentioned, the breach averred being "that the violation of said ordinance consisted in permitting or suffering a locomotive or train to run in said city at said time and place without causing the usual signals to be given continuously by ringing the bell and otherwise."

The defendant interposed demurrers to all of the foregoing counts, except the twelfth, assigning substantially the following grounds: That the allegations of negligence in each of said counts are vague, indefinite and uncertain; that wherein defendant was negligent in the premises is not alleged with sufficient clearness; and that it appears from the allegations of said counts that the negligence therein complained of was not the proximate cause of the alleged injury. These demurrers were overruled, except as to the eighth count, which count was amended to meet them.

The defendant pleaded the general issue and several special pleas, in which it set up the contributory negligence of the plaintiff. To these special pleas demurrers were separately and severally interposed. The rulings upon these demurrers, as set forth in the judgment entry, was as follows: "The demurrers to the fifth, sixth and seventh pleas are by the court heard, considered and overruled." To the several special pleas the plaintiff filed the following replications: "1st. Plaintiff takes issue on each of said pleas. 2d. For further replication plaintiff says that she was crossing the tracks, where she was injured, by the invitation of the defendant. 3d. That the defendant's watchman at said crossing signalled plaintiff to cross, at the time and place when and where said injuries occurred. 4th. That plaintiff could not by stopping, looking and listening, have seen or heard the engine, which caused said injuries." To these replications the defendant filed demurrers, assigning several grounds. The rulings upon these demurrers, as set forth in

the minute entry were as follows: "And the demurrer to the replications are by the court heard, considered and overruled."

The accident to the plaintiff occurred at the Eighteenth street crossing in the city of Birmingham, where said street is intersected by several railroad tracks. The location of these tracks is sufficiently shown in the opinion.

About half past seven on the evening of September 3d, 1897, the plaintiff in company with her son Frank and Mrs. McPherson, all of them riding bicycles, attempted to cross Eighteenth street at the above described point, the party coming from the south side toward the north side. The testimony for the plaintiff tends to show that after crossing one track and while fifty feet from a flagman, they called for a signal, being within ten feet of the flagman when they received a signal for them to pass over, and that at the time he gave the signal, the flagman had both a white and red light in his hand. On one of the tracks outside of the south fence there was a string of box cars, which plaintiff, her son and Mrs. McPherson contended obstructed the view of the passenger train which was approaching from the west, until said track had been passed. That this passenger train—the Montgomery accommodation—was runing from ten to fifteen miles per hour, and that they were within twenty feet of it when they first saw it. The plaintiff was about four feet ahead of her son, Mrs. McPherson being directly behind young Stewart. That they crossed over safely in front of the passenger train which barely missed them, and did not discover the switch engine, which caused the accident, until they had crossed the passenger track. Young Stewart dismounted within five feet of the switch engine, to which some cars were attached, and Mrs. McPherson got off her wheel directly behind him, the plaintiff not dismounting. That the accommodation train was within twenty feet of them when they first saw it, and that none of them saw the switch engine, which caused the injury, until within a few feet of it. Frank Stewart and Mrs. McPherson dismounted

when within five feet of the engine but Mrs. Stewart, being ahead of them, did not have time to dismount. The switch engine, according to the testimony of plaintiff's witnesses, was running backward at a speed variously estimated from four to ten miles per hour. Neither the plaintiff, her son Frank, Mrs. McPherson nor E. Whetstone, who was present at the time of the accident, heard any signal or ringing of the bell from the engine, nor did they see any headlight thereon. Plaintiff's testimony further tended to show that it was impossible for a person crossing Eighteenth street to know on which track a train approaching on the accommodation track one block away, and beyond the curve, would cross Eighteenth street on.

The defendant showed that the distance from the track on which the accomomdation train was entering the city and the track, on which the accident happened, was 78.9 feet. The engineer of the accommodation train, who was corroborated by his fireman and other witnesses, swore positively that Frank Stewart and Mrs. McPherson did not cross in front of the accommodation train. The engineer of the switch engine, his fireman and others present, testified that at the time of the accident the bell of the switch engine was being rung, and that both of the headlights on the switch engine were burning brightly at the time of the accident. The fireman testified that he was ringing the bell. The engineer of the switch engine, who was on the right hand side of the engine, the side from which the plaintiff was approaching, testified that he did not see her until after she was against the tender of the engine, and that at the time of the accident he had moved his engine about fifty feet, going from the west side of the street toward the east side and that he stopped the engine within six or eight feet after discovering that the plaintiff was hurt. The evidence of the defendant tended to show that the accommodation train was approaching Eighteenth street at the speed of from six to eight miles per hour, and that the switch engine was backing at a rate of from two

to four miles per hour. It is undisputed that the flagman who gave the signal for the plaintiff and her party to cross had no control over the track upon which the switch engine was running, and that his authority did not extend to, nor did his duties require him to flag the tracks north of the gates. The tracks which go into the shed were guarded by a gateman, whose duty it was to warn passers of approaching trains and to raise the gates to allow trains ingress and egress to and from the depot. The testimony for the defendant tended to show that the plaintiff ran into the tender of the switch engine about six or eight feet from the rear, and that the engine did not run against her. The plaintiff introduced four sections of the city code of Birmingham, the first of which provided substantially that railroads operating tracks over Eighteenth street must keep electric lights burning all night and a watchman or flagman on guard day and night.

The second provides that it shall be the duty of such flagman to remain at all times in full view of persons approaching said crossing, whether they approach on foot or in vehicles, and that it shall be his further duty to signal them if they can pass over safely, and to stop them if a train is approaching too close to admit of a safe passage.

The third section provides that it shall be unlawful to run a locomotive, within the city limits, at a greater rate of speed than eight miles per hour while going forwards, or four miles per hour while going backwards; or to run a locomotive in the night time without providing a suitable headlight thereon; or to run such locomotive or train without giving signals by ringing the bell, etc.

The fourth section introduced in evidence provided that it should be unlawful for any railroad company to hinder the free passage of vehicles or to allow holes or excavations to remain open sufficiently long to hold stagnant water or disfigure the streets or to endanger persons or vehicles.

During the examination of Mrs. J. M. McPherson, who was riding along with the plaintiff at the time of the accident, and after she had testified to the accommodation train coming in on the L. & N. track, and to the narrow escape she and the plaintiff had in crossing in front of said train, she was asked the following questions: "State to the jury how fast it (the train) was running, in your judgment?" The State objected to this question upon the ground that the witness was not shown to be an expert, and upon the further grounds that it was not shown that she had any knowledge of the matters inquired about, and that the testimony called for was incompetent, irrelevant and immaterial. The court overruled this objection, and the defendant duly excepted. The witness answered: "In my judgment it was running about fifteen miles an hour." After the witness had testified that she had seen cars running, but knew nothing about the speed unless they were running very fast, she was asked the following question: "Now tell the jury how fast, in your judgment, this train was running." The defendant interposed the same objection to this question as was interposed to the other and duly excepted to the court's overruling this objection. The witness answered that in her judgment the train was running at least fifteen miles an hour. The witness was then asked the following question: "Was there any way for you all to see that train before you passed that string of box cars that you say were on one of the tracks?" The defendant objected to this question, because it called for a conclusion of the witness and was invasive of the province of the jury. The court overruled the objection, and the defendant duly excepted. The witness answered that there was no way for them to see the train.

After this witness had testified to the circumstances of the accident and to Mrs. Stewart having been thrown from her wheel, she further testified that in addition to other injuries sustained by Mrs. Stewart, her back was wrenched. The defendant moved the court to exclude this statement of the witness, and

duly excepted to the court's overruling the motion. The witness was then asked the following question: "How do you know her back was wrenched?" She answered: "Well, I don't know exactly what terms you would say, but she has suffered from her back ever since." The defendant moved to exclude this answer of the witness from the jury, and duly excepted to the court's overruling this motion. After having testified that the plaintiff was confined to her bed three weeks, she was asked the following question: "Do you know, of your own knowledge, whether plaintiff has ever recovered from those injuries or not?" The defendant objected to this question upon the grounds that it called for the conclusion of the witness and that the witness could not know whether the plaintiff had recovered from her injuries or not except by hearsay. The court overruled the objection and the defendant duly excepted. The witness answered that she knew the plaintiff had not recovered.

During the examination of Dr. W. H. Wilder, the physician who attended the plaintiff at the time of the accident complained of, and after having testified that in his examination he discovered that the plaintiff's ankle was bruised and there were other bruises upon her limbs, he was asked this question: "What was the probable consequences to the ankle of a severe bruise of that kind; it that effect permanent?" The witness answered that sometimes the injuries were permanent. The defendant moved to exclude this answer upon the ground that he was not testifying to the condition which he observed with respect to injuries sustained by plaintiff. The court overruled this motion, and the defendant duly excepted. The witness Dr. Wilder was then asked the following question: "What are the probable consequences—natural and probable consequences—of bruises of that kind?" The witness answered as follows: "Severe bruises around the ankle and knee heal less rapidly than around almost any other part of the body, because a majority of the weight of the body is placed upon these parts." The defendant

moved to exclude this answer upon the ground that it was not responsive to the question. The court overruled the motion, and the defendant duly excepted. Upon the further examination of Dr. Wilder, as a witness, the following question was propounded to him: "I will ask you as an expert to state what your opinion would be as to cause of kidney trouble if it appeared in a person on the following circumstances, assume that she is a woman forty years old now, that she had no such troubles previous to that time, that she should receive an injury to the back by being run over or upon or against by a railroad train or an engine, that she should be bruised and skinned about the limbs, and that immediately after that her back began to hurt her, and continued from time to time to to hurt her, and from that time on she has suffered with kidney trouble, what would you say was the probable cause of her condition?" Defendant objected to the question, because it was practically asking the witness to try the case, instead of the jury. The court overruled the objection, and the defendant excepted. Witness answered: "Under the circumstances as stated in the question, I would be forced to say that, in my opinion, it was due to the lick received in the back."

W. H. Snitzer, who was the engineer on the switch engine against which the plaintiff's bicycle ran at the time of the injuries sustained by her, was examined as a witness, and, after testifying to the circumstances of the accident and to the condition of the engine, and that the switch engine was backing at the time specified, he was asked the following question: "Do you know what the rule of your company is with regard to running your trains backwards across Eighteenth street?" The defendant objected to this question, and duly excepted to the court's overruling his objection. The witness answered: "There is no rule about speed running backwards, not that I know of. A locomotive is supposed to go one way as fast as she is the other. She is supposed to work both ways." Defendant moved the court to exclude this answer of the witness upon the ground that it was in-

competent, irrelevant and immaterial. The court overruled the motion, and the defendant duly excepted.

Upon the introduction of all the evidence the court at the request of the plaintiff gave to the jury the following written charges: (1.) "Contributory negligence would not be chargeable to the plaintiff if you believe from the evidence that defendant's watchman invited her to cross that track, and that while so attempting to cross, it became suddenly and without warning apparent that she was in danger from an approaching train, if after that she acted wildly under the influence of fright occasioned by said danger or apparent danger." (2.) "The jury must consider all the circumstances surrounding the plaintiff at the time of and immediately before her alleged injury in determining what would be reasonable and prudent." (3.) "In determining from the evidence whether the plaintiff had time and opportunity to exercise reasonable diligence to protect herself from any and all danger to be apprehended in crossing such other tracks yet to be crossed and whether she should have stopped and looked and listened before undertaking to cross such other tracks, if you believe from the evidence that she was crossing defendant's tracks by invitation of defendant's watchman, I charge you that if the evidence shows that there was a sudden danger or apparent danger confronting plaintiff, and she acted wildly, under such circumstances she would not be chargeable with contributory negligence therefor."

The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by it: (1.) "Even though you should believe from the evidence that the flagman had invited the plaintiff to cross the tracks, if you believe from the evidence that after such invitation had been given a reasonably prudent person, by the approach and passage of the accommodation train, would have been informed that it was not safe to longer rely upon such invitation, I charge you that it then became the

duty of the plaintiff to exercise reasonable diligence to protect herself from any and all danger to be apprehended in crossing such other tracks yet to be crossed, and I also charge you it then became plaintiff's duty to stop, look and listen before undertaking to cross such other tracks." (2.) "If you believe the evidence you must find for the defendant under the second count of the complaint." (3.) "If you believe the evidence you must find for the defendant." (4.) "If you believe the evidence you must find for the defendant under the fourth count of the complaint." (5.) "If you believe the evidence you must find for the defendant under the sixth count of the complaint." (6.) "If you believe the evidence you must find for the defendant under the twelfth count of the complaint." (7.) "The court charges the jury that it was the duty of the plaintiff to alight from her bicycle when she became aware of the approach of the accommodation train, if from the evidence you believe that she could then have safely alighted." (8.) "The court charges the jury that the plaintiff was guilty of contributory negligence." (9.) "If you believe the evidence you must find for the defendant under the seventh count of the complaint." (10.) "If you believe the evidence you must find for the defendant under the eighth count of the complaint." (11.) "If because of the distance between where the plaintiff found the flagman acting as such and the track where she was injured, and because there were tracks between the flagman and such track that were so fully protected by gates that they did not need to be flagged, a reasonably prudent person would not have assumed that the flagman was flagging the track at which the plaintiff was injured, then I charge you, you should not have assumed that the flagman was flagging such last named track, and she ought not to have relied when she came to cross such track on the signal given by the flagman." (12.) "Considering the ease of dismounting and the control of the rider over his instrument, a bicycler must, under all ordinary circumstances, be treated as subject to the same rules as

a pedestrian; he must stop, look and listen before attempting to cross a railroad track." (13.) "If you believe from the evidence that a reasonably prudent person would have been warned by the approach and passage of the accommodation train, that it was unsafe to attempt to cross the other tracks yet to be crossed by the plaintiff without stopping and listening, and that the plaintiff did not stop before attempting to cross such track, that she had time to stop before making such attempt, you must find for the defendant." (14.) "If when plaintiff discovered the switch engine she had time to stop before going upon the track where she was injured and she could have safely stopped, your verdict must be for the defendant." (15.) "If the jury believe from the evidence that the track at or upon which the plaintiff was injured was one hundred yards from the place where the flagman was standing when the plaintiff first approached the crossing, that between the t ack at or upon which she was injured and the place where the flagman was standing there were tracks that were protected, not by the flagman, but by the gates, that the tracks protected by the gates, because of such protection, did not need to be protected by the flagman, and that the track upon or at which the plaintiff was injured was so far away from the post of duty of the flagman that the flagman could not flag or protect it, then I charge you that the plaintiff had no right to assume that the flagman was flagging such track." (16.) "Even though you should believe from the evidence that the flagman had invited the plaintiff to cross the tracks, if you further believe from the evidence that after such invitation had been given, the plaintiff, by the approach and passage of the accommodation train, was informed that it was not safe to longer rely upon such invitation, I charge you that it then became the duty of the plaintiff to exercise reasonable diligence to protect herself from any and all danger to be apprehended in crossing such other tracks yet to be crossed, and I also charge you it then became plaintiff's duty to stop, look and listen before undertaking to cross such

other tracks." (17.) "If you believe from the evidence that the accommodation train passed over the crossing on a track one hundred feet distant from the track where she was injured, that by the approach and passing of the accommodation train over the crossing she was notified and warned that it was unsafe to assume that engines, cars, or trains would not be passing over the other tracks yet to be crossed by the plaintiff, then I charge you that it then became the duty of the plaintiff to stop, look and listen before crossing such other tracks, and if you believe from the evidence that she did not stop before attempting to cross the track at or upon which she was injured, you must find for the defendant." (18.) "If you believe from the evidence that the plaintiff was warned by the approaching and passage of the accommodation train that it was unsafe to rely any longer upon any invitation the evidence may show was given to her by the flagman, then I charge you it then became the duty of the plaintiff to both stop, look and listen before going upon or attempting to cross the track at or upon which she was injured, if from the evidence you further believe that after being so warned she had time to take such precautions, and if you believe from the evidence that she did not stop before attempting to cross the track where she came in collision with the switch engine, you must find for the defendant."

There were verdict and judgment for the plaintiff, assessing her damages at $1,035. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

THOS. G. & CHAS. P. JONES and ALEX. C. BIRCH, for appellant, cited *Phoenix Ins. Co. v. Moog,* 78 Ala. 284; *M. & O. R. R. Co. v. George,* 94 Ala. 199; *H. A. & B. R. R. Co. v. South,* 112 Ala. 642; *L. & N. R. R. Co. v. Mothershed,* 110 Ala. 143; *Lewis v. Railroad Co.,* 54 Mich. 60; *Ga. Pacific R. Co. v. Lee,* 92 Ala. 262.

B. M. ALLEN, *contra.*—The plaintiff would not be guilty of contributory negligence if invited by the de-

fendant to cross.—*Highland Avenue & Belt R. R. Co. v. Sampson*, 91 Ala. 564; *Webb v. Louisville & Nashville R. R. Co.*, 90 Ala. 193; 4 Am. & Eng. Ency. of Law, 72, note 1; 4 Am. & Eng. Ency. of Law, 74 and 75, note 3.

Contributory negligence is not chargeable to the person who acts wildly when peril comes without warning. In the absence of evidence, plaintiff is presumed to have acted with diligence.—*Cook v. Central Railroad*, 67 Ala. 533; *M. & M. R. R. Co. v. Ashcraft*, 48 Ala. 15. For other authorities bearing upon the question raised, see *G. P. R. R. v. Lee*, 92 Ala. 262; *Pennell v. N. F. & S. R. R. Co.*, 97 Ala. 302; *L. & N. R R. Co. v. Watson*, 90 Ala. 69; *G. P. R. R. Co. v. Shields*, 90 Ala. 29.

SHARPE, J.—Recitals in this record relating to demurrers to pleadings are not such as to constitute judgments disposing of the demurrers, and under the practice established by previous decisions the matters assigned for error based on such recitals cannot be reviewed.—*Jasper Mer. Co. v. O'Rear*, 112 Ala. 247; *McKissick v Witz*, 120 Ala. 412; *Blankenship v. Owens*, 27 So. Rep. 947; *Hereford v. Combs*, 126 Ala. 369; *Bessemer L. & I. Co. v. DuBose*, 125 Ala. 442.

Recovery is sought for injuries sustained by the plaintiff in being thrown from a bicycle by colliding with defendant's engine on Eighteenth street in Birmingham. Eighteenth street runs nearly north and south, and along a distance of about 363 feet is crossed by numerous contiguous tracks belonging to defendant and another railroad company extending eastward and westward. The most southern of those tracks were used principally for freight trains. Where they crossed the street, a watchman was stationed who acted for both companies in warning street travelers of the approach of trains. Next to those tracks were others used for passenger trains which entered the station enclosure through gates extending along the east side of the street. The gates were raised only to admit the passage of trains, and the person who acted for defendant in operating them was accustomed to

[Louisville & Nashville Railroad Co. v. Stewart.]

warn street travelers against trains when necessary. Outside of, and north of, the enclosure, were other tracks sometimes used for switching, at which no guard was stationed.

About nightfall, plaintiff with two companions riding bicycles approached the track—crossing from the south —and were signalled by the watchman at the freight tracks to proceed. The freight tracks were crossed with safety, but on a passenger track plaintiff was closely pressed to cross ahead of a train the approach of which from the west had been obscured by standing cars. She quickened her pace to avoid the passenger train and on reaching the switching track came in contact with a switch engine which was backing from the east.

Plaintiff testified in substance among other things that she was a little excited by seeing the passenger train so near, and that she had moved after crossing that passenger track about 20 or 25 feet over three or four tracks when she was struck by the switch engine after the front wheel of her bicycle had crossed one rail of the switch track, and that she had no warning and knew nothing of the engine until a second before it struck her. Other evidence tends to show that between the track on which the passenger train ran and the place of the accident was 78 feet, that the engine had headlights burning on both ends, that its bell was being rung, and that the plaintiff rode against the engine, striking it several feet from the front end.

No error was committed by the trial court in its rulings on objections to evidence.

In support of averments of negligence it was proper to admit proof as to what tracks the watchman was accustomed to attend, and as to what opportunity street travelers had of knowing the movements of trains over the street.

Though the passenger train was not the immediate cause of the accident, its movements were of the *res gestae;* proper to be proven and considered as bearing on the question of contributory negligence,

A witness though not an expert may from observation of a running train, testify as to its speed.—*K.*

*C. M. & B. R. R. Co. v. Crocker*, 95 Ala. 412.

Statement of Mrs. McPherson about plaintiff's physical condition were apparently of fact and not of opinion.

Opinion evidence of experts such as physicians may be based upon the facts of which the witness has actual knowledge as well as upon abstract hypothesis. It is not a valid objection to a physician's opinion concerning cause and effect of disease and injury that it assumes the form of a conclusion.—1 Green. Ev., § 440; *Mobile Life Ins. Co. v. Walker*, 58 Ala. 290.

Snitzer's testimony concerning the rule of backing engines was not plainly irrelevant, and, therefore, the court will not be placed in error for overruling the merely general objections thereto.—Rule of Court, 90 Ala.

Charges 1 and 3 requested by the plaintiff unduly restricted the jury in determining whether the plaintiff was guilty of contributory negligence, and should not have been given.

It is true that one charged with the duty of giving warnings of the movements of trains may by others be presumed to know what trains are about to move, and that one about to cross the tracks may, when no danger is apparent to him, rely and act upon the invitation given him to cross without observing the usual cautionary requirements of stopping, looking and listening.—*L. & N. R. R. Co. v. Webb*, 90 Ala. 185. And it not appearing that the plaintiff knew to what track the watchman's duties extended, the question of whether she was justified in relying on his signal as invitation to cross all the tracks was under the circumstances one for the jury. This is perhaps sufficiently recognized in plaintiff's charges 1 and 3; but they each contain a further proposition inserted probably in an attempt to pursue the first paragraph of the rule quoted in *Cook v. Cent. R. etc., Co.*, 67 Ala. 533, from Wharton's Law of Negligence, section 304, which states that "a person is not chargeable with contributory negligence who when unwarned peril comes on him suddenly acts wildly and madly." If under any condition of

evidence that proposition may be stated in a charge to the jury this is not such a case. We think it was only meant to assert that under the conditions mentioned, contributory negligence would not be imputed as a conclusion of law. This is indicated by the next paragraph of the quoted rule, which proceeds thus: "For persons in great peril are not required to exercise all the presence of mind and care of prudent, careful men; the law makes allowances for them and leaves the circumstances of their conduct to the jury." Assuming as the jury might have done, the truth of the evidence tending to show that the passenger track and the switch track in question were 78 feet apart, and that plaintiff rode against the engine, it cannot be affirmed as matter of law that the plaintiff did not recover from her excitement caused by the passenger train in time to have avoided the accident. The fact, if it be such, that by the passenger train she was subjected to and deprived of good judgment by danger so sudden and imminent as might naturally have had such effect on a person of ordinary prudence and judgment, and was thereby caused to act wildly, should have been submitted to the consideration of the jury without giving it the conclusive legal effect, either alone or in connection with the invitation to cross, of acquitting the plaintiff of contributory negligence.—*Woodward Iron Co. v. Andrews,* 114 Ala. 241; *Holland v. T. C. I. & R. Co.,* 91 Ala. 444; *Buel v. N. Y. Cent. R. Co.,* 31 N. Y. 314; *Railroad Co. v. Yarwood,* 17 Ill. 509. Charge 3 was also faulty in all hypothesis as to whether plaintiff's wild action, if any, was induced by the danger referred to.

In charge 11 requested by the defendant the pronoun "you" should be followed by the words "that the plaintiff," or words of similar import in order to make it good. Outside of the bill of exceptions the same charge is set out in the transcript except that those words are inserted, but we have only to consider the bill of exceptions in determining which charge was refused.

There was no error in refusing any of the other charges requested by the defendant, or in giving plaintiff's charge numbered 2.

Counts of the complaint with reference to which the general affirmative charges were refused to defendant are each supported by some evidence.

Charge 12 was calculated to mislead the jury in that the term "ordinary circumstances" might have been understood to include the giving of signals to cross tracks, which may in the absence of apparent danger, absolve a traveler whether on foot or on a bicycle from the duty of stopping, looking and listening for trains.

The refused charges not specially mentioned either ignore the effect of the invitation to cross or the principle which makes allowance for unduly excited and mistaken action in one who, by a defendant's wrong, is subjected to danger of such sudden and imminent character as would ordinarily have induced such action.

For the errors in giving plaintiff's charges 1 and 3 and in refusing defendant's charge 11, the judgment must be reversed and the cause remanded.

Reversed and remanded.