# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1903.

## Kroell *v.* The State.

*Indictment for Murder.*

1. *Trial and its incidents; continuance discretionary with the court; not revisable on appeal.*—A motion for a continuance of a cause is addressed to the sound discretion of the court, and in the absence of a showing that the court abused its discretion in denying the motion for a continuance, the action of the court upon such motion is not revisable on appeal.

2. *Same; same; case at bar.*—When a case for murder was called, the defendant moved for a continuance on the ground of the absence of two physicians who were material witnesses. On the hearing of the motion, it was shown that these physicians lived more than one hundred miles from the place of the trial, that no effort had been made to obtain the depositions of said witnesses until the Saturday just preceding the Wednesday, which was the day set for the trial. The State objected to a continuance of the case. *Held:* That in denying the motion for a continuance, there was no abuse of the discretion of the trial court, but under the facts, such ruling was proper, and the court did .not err in refusing to put the State to an admission as to what the absent physicians would testify.

3. *Depositions; not admissible when taken and certified to by a stranger to the commission.*—Depositions of absent witnesses, when not taken or certified by a commissioner appointed for such purpose, but by a stranger to the commission, are properly suppressed; and where such depositions were filed in court after the trial had been entered upon, it is not error for the court to grant a motion to suppress such depositions, when they are offered in evidence.

4. *Insanity; admissibility of non-expert testimony.*—Where a witness in a criminal case, though not competent to give his opinion as an expert as to defendant's sanity, testifies that he had known the defendant for several years and had lived in the same town with him, that he had had business transactions with him, conversed with him and had seen him almost daily, had seen him have business transactions with other people, and that at the time of the commission of the offense defendant was engaged in business, such witness is qualified to express his opinion as to the defendant's sanity, in connection with his testimony as to the facts.

5. *Insanity as a defense; when testimony as to defendant's sanity not prejudicial.*—On a trial of a criminal case, where the defendant interposes the plea of "not guilty" and the statutory plea of "not guilty by reason of insanity," the fact that one of the State's witnesses testified as to the defendant's sanity before there is any evidence offered by the defendant to show his insanity, does not prejudice the defendant and constitutes no ground for a reversal of the judgment of conviction.

6. *Homicide; admissibility of evidence as to firing of fatal shot.* On a trial under an indictment for murder, where the evidence shows that there were several shots fired on the occasion of the homicide at night, all by the person or persons who assailed the deceased, and there is a question as to whether they were all fired by one man, a witness who was looking on at the flashes of the guns at different places, noting their nearness in point of time and apparent distance apart in point of space, and hearing and noting the closeness of the reports, is competent to testify as to whether in his opinion, judging from the positions where the flashes occurred and the close succession of the shots, one man could have fired all of the shots.

7. *Homicide; when particulars of former difficulty admissible.*—On a trial under an indictment for murder, where, upon the cross-examination of a State's witness, the particulars of a former difficulty between the deceased and the defendant were in part drawn out by the defendant, it is not error for the court to allow the State, on redirect examination of said witness, to draw out the other particulars of said former difficulty.

8. *Homicide; insanity; when ruling of judge as to witness not being expert without injury.*—On a trial under an indictment for murder, where, in addition to the plea of "not guilty" the defendant interposed the statutory plea of "not guilty by reason of insanity," and upon the examination of a physician

[Kroell v. The State.]

before the court, in the absence of the jury, the court de-
cides that said witness was not an expert, and could not be
examined as an expert on insanity, but after such ruling the
witness was allowed to give his opinion from what he knew
of the defendant that he was of unsound mind and had a
form of epilepsy which would sooner or later develop into in-
sanity, and upon cross examination the witness testified that
he considered the defendant insane at the time of the homi-
cide, the ruling of the court that such witness was not compe-
tent as an expert, if erroneous, was without injury or prejudice
to the defendant.

9. *Insanity; burden of proof; charge of court.*—On a trial under an
indictment for murder, where the defendant pleads "not guilty
by reason of insanity," a charge is erroneous and properly re-
fused which instructs the jury that "the burden of proof is
not on the defendant as to his insanity at the time he killed"
the deceased.

10. *Same; reasonable doubt; charge to jury.*—On a trial under an
indictment for murder, where the defendant pleads "not guilty
by reason of insanity," a charge is erroneous and properly re-
fused which instructs the jury "that if they have any reason-
able doubt growing out of the evidence as to whether" the
defendant "was insane or not at the time he killed" the de-
ceased, they should find the defendant not guilty.

APPEAL from the Circuit Court of Shelby.

Tried before the Hon. A. H. ALSTON.

The appellant in this case, Frank Kroell, was indicted
and tried for the murder of Walter S. Cary, was con-
victed of murder in the second degree, and sentenced to
the penitentiary for 36 years. When the defendant was
arraigned, he pleaded "not guilty" and the statutory
plea of "not guilty by reason of insanity."

When the case was called for trial the defendant's
counsel announced that he was not ready and moved for
a continuance, because of the absence of Doctors J. T.
Searcy and W. D. Partlow, Superintendent and Assist-
ant Physician, respectively, of the Alabama Insane Hos-
pital at Tuscaloosa, at the same time stating to the court
that said witnesses had been regularly subpoenaed for
the defendant, that interrogatories had been regularly
filed and commissions issued to take the depositions of
said witnesses, but said depositions had not arrived.

[Kroell v. The State.]

Upon the hearing of this motion, it was further shown that Doctors Searcy and Partlow resided more than 100 miles from the county seat of Shelby county according to the usual mode of travel; that the defendant was arraigned on March 26, 1903, and Wednesday of the succeeding week, which was the first day of April, was the day set for his trial; that the interrogatories proponded to the witnesses Searcy and Partlow were not filed until Saturday preceding the Wednesday; that Henry A. Jones, Esq., Henry B. Foster, Esq., and J. J. Mayfield, Esq., were named as commissiones, in the alternative, in the commission which was issued with said interrogatories; that neither of the attorneys named in the commission consented to serve as commissioners and so notified the attorneys for the defendant, and asked if the interrogatories and commission should be turned over to one Fleetwood Rice, Esq., a reputable attorney at the Tuscaloosa bar; that the attorneys for the defendant directed that the commission and the interrogatories should be turned over to said Rice, who proceeded to take the depositions of said witnesses. These depositions had not been returned to the court at the time the case was called for trial. The solicitor objected to the granting of the motion of the defendant for a continuance, upon the grounds that the State's witnesses were out of the jurisdiction of the court; that it appeared they were practicing physicians whose depositions might have been taken in due time if diligence had been used, and that it was shown that no diligence had been used in order to obtain the depositions of said witnesses. Thereupon the court overruled the defendant's motion for a continuance, and to this ruling the defendant duly excepted. The attorneys for the defendant then asked the court to put the State upon a showing as to what the witnesses Doctors J. T. Searcy and W. D. Partlow would testify if present. The solicitor objected to the granting of said motion, upon the ground that no diligence was shown to have been exercised by the defendant to secure the depositions of said witnesses. The court overruled the motion of the defendant's counsel

and declined to put the State upon the showing, and to this ruling the defendant duly excepted.

It was shown by the evidence in the case that the deceased, Walter S. Cary, was killed on Saturday afternoon, December 14, 1901, at dusk, and just before dark; that he was killed by being shot by the defendant Frank Kroell; that the shooting occurred on the streets in the town of Montevallo; that Frank Kroell and his brother George Kroell, together with their mother, were walking across the street; that Frank Kroell was carrying a double barrel gun in his hand; that just before they reached the place where Cary was standing, two gun shots were fired and two pistol shots were fired at said Cary; that these shots were fired in rapid succession, some witnesses testifying that they were fired from different positions on the street; that after Cary fell, Frank Kroell walked to where he was lying and fired a 38-calibre pistol ball into the back of his head. There was some evidence introduced showing that the defendant and the deceased had had a difficulty two or three hours before the homicide occured.

There was evidence for the defendant tending to show that as the defendant and his brother and mother walked near to Cary, the latter remarked with an oath, "Now, I have you," and levelled his pistol at the defendant, whereupon the defendant shot at him, discharging both barrels of the gun. The defendant also introduced testimony tending to show that he was of unsound mind and insane at the time of the killing.

Dr. K. F. Lane was examined as a witness for the State and testified to having seen the shots fired, which killed the deceased, and to having examined the deceased after he was shot. This witness testified that he had been a practicing physician since 1895; that he had known the defendant for three or four years, during which time they both lived at Montevallo; that he had professional and business transactions with the defendant, had conversed with him and seen him almost daily on the streets of Montevallo; and had seen him have business transaction with other people, and that at the time of the killing the defendant was engaged in the

business of conducting a large livery stable in Monte-vallo. Thereupon the solicitor asked Dr. Lane the fol-lowing question: "From your acquaintance, your pro-fessional and business transactions with him, from what you saw him do and heard him say, and what you know of his business transactions with other people during the time you knew him up to, and including the 14th day of December, 1901, was he in your opinion sane or insane?" The defendant objected to this question upon the ground that no evidence had been introduced by the defendant as to his insanity. The court overruled the objection, and to this ruling the defendant duly excepted; and upon the witness answering that in his opinion the de-fendant was sane, the defendant moved to exclude the answer and duly excepted to the court overruling his motion.

Dr. A. B. Horn, as a witness for the State, testified that he was with Dr. Lane at the time of the shooting and witnessed it; that there were two gun shots and two pistol shots fired, all of which were fired in very close succession and were fired from different positions in the street. The solicitor then asked the witness the following question: "Judging from the positions where you saw the flashes, and the close succession of the shots, in your opinion, could one man have fired all the shots?" The defendant objected to the question, because it called for the conclusion of the witness, and because it called for illegal, immaterial and irrelevant evidence. The court overruled the objection and the defendant duly ex-cepted. Upon the witness answering that in his opinion one person could not have fired all the shots, the defend-ant moved to exclude the answer and duly excepted to the court overruling his motion.

T. M. McPhail, a witness for the State, testified that he was at the store of George Kroell at the time Cary was shot; that shortly after the shooting the defendant walked into the store, shook hands with a man named Smith and told him good bye, at the same time saying, "I have killed him, he tried to kill me, and I killed him first." On the cross-examination of the witness, Mc-

Phail, he testified that the deceased, Walter Cary, and the defendant Frank Kroell had a difficulty three or four hours before Walter Cary was killed, which occurred at the express office. The attorney for the defendant then asked the witness during his cross-examination, if he saw Cary with a pistol at that time, and the witness answered that he saw Cary with a pistol shortly after the difficulty. Upon re-direct examination of this witness the solicitor for the State asked him the following question: "Did you see Frank Kroell with a pistol in his hand before or after the difficulty, in the express office, but not during such difficulty?" The defendant objected to this question, because it called for the particulars of a former difficulty and for illegal and irrelevant testimony. The court overruled the objection, and the defendant duly excepted. The witness answered that he did see Frank Kroell at the express office with a pistol in his hand before the difficulty and after the difficulty, but did not see him with a pistol during the difficulty. The defendant moved to exclude this answer, and duly excepted to the court overruling his motion. The defendant then asked the witness the following question: "If when he saw Kroell with the pistol it was before or after he saw Cary with a pistol?" The defendant objected to the question upon the ground that it called for the particulars of a former difficulty and for illegal, immaterial and irrelevant testimony. The court overruled the objection, and the defendant duly excepted. Upon the witness answering that he saw Kroell with the pistol just before he saw Cary with the pistol, the defendant moved the court to exclude the answer, and duly excepted to the court overruling his motion.

Upon the State resting its case, the defendant offered to introduce in evidence what purported to be the depositions of the witnesses Doctors Searcy and Partlow, and which were taken by Fleetwood Rice, Esq., under the circumstances hereinbefore detailed. The State objected, and

moved the court to suppress the depositions, on the ground that they were not taken by one of the commissioners named in the commission. The court sustained the motion, ordered the depositions suppressed, and to this ruling the defendant duly excepted.

The defendant then offered to prove that subpoenaes had been issued to said witnesses, Drs. J. T. Searcy and W. D. Partlow, and also offered to prove the circumstances under which the depositions that were then offered in evidence were taken, which are stated above. The State objected to the defendant being permittd to make proof of each of such facts, the court sustained each of the State's objections, and to each of these rulings the defendant separately excepted.

Dr. J. B. Gibson, a witness for the defendant, testified that he had been a practicing physician since 1885, and owned an infirmary in Birmingham; that during his eighteen years of practice he had treated twelve cases of insanity; that he was a general practitioner, and had studied insanity to a certain extent along with other branches of medicine; that he had known Frank Kroell, the defendant, for nearly two years; that the defendant came to him in the latter part of the spring of 1901 for treatment and remained as a patient for one month; that during this time the witness treated the defendant for nervous trouble and epilepsy; that after being under his treatment for a month the defendant left and did not return until January 23, 1902, when he came back for treatment for the same trouble. Upon the defendant offering the witness as an expert on insanity, the solicitor objected, upon the ground that no sufficient predicate had been laid for the court to determine whether the witness was an expert on insanity. Thereupon the solicitor requested the privilege of examining the witness in the hearing of the court alone, in order that the court might determine whether the witness was competent to be examined as an expert. The jury retired, and thereupon the witness was examined in the presence of the court

alone.   The solicitor then asked the witness the follow-
ing question:   "Are you or do you claim to be an expert
or specialist on insanity?"   The defendant objected to
the question, upon the ground that it called for the con-
clusion of the witness, and that it called for a legal con-
clusion which was to be passed on by the court.   The
court overruled the objection and the defendant duly ex-
cepted.   Upon the witness answering that he was not an
expert on insanity and did not claim to be, the defend-
ant's attorney asked him, "What he meant by an expert
on insanity?" and upon the witness answering that he
meant a specialist, the defendant moved to exclude the
answer, that he was not an expert, and duly excepted to
the court overruling his motion.   Having heard the
cross-examination of the witness, the court declined to
allow him to testify as an expert on insanity, and to this
ruling the defendant duly excepted.   Thereupon the
witness testified, as an non-expert, that he had seen the
defendant, Frank Kroell, in Birmingham at different
times in the intervals when he came to his infirmary for
treatment, and that in his opinion "he was not right;
that he had a form of epilepsy, which, in his opinion,
would sooner or later develop into insanity."   Upon the
cross-examination of this witness, he testified that the
defendant was nervous, irrascible and high tempered,
and that in his opinion, on the day of the killing, he was
insane.   This witness further testified that the defend-
ant was smart and shrewd, and knew how to take care
of himself in business transactions; that he made
his own contract with the witness and attended to all of
his business himself.   This witness was asked no hypo-
thetical questions as to the defendant's sanity or insan-
ity.

Upon the introduction of all the evidence the defend-
ant requested the court to give to the jury the following
written charges, and separately excepted to the court's
refusal to give each of them as asked:   (1.)   "The
burden of proof is not on the defendant as to his insanity
at the time he killed Cary."   (2).   "The court charges
the jury that if they have any reasonable doubt growing
out of the evidence as to whether Kroell was insane or

not at the time he killed Cary, they should find the defendant not guilty."

BROWNE & LEEPER and THOS. L. BULGER, for appellant.--The court below erred in refusing defendant's motion for continuance and forcing him to trial without his witnesses.—*Dudley v. Witter,* 44 Ala. 664; *Childress v. State,* 86 Ala. 77.

A non-expert cannot give his opinion as to the existence of a fact without first proving the facts and circumstances upon which he bases his opinion. In this case the facts upon which the opinion was based was only stated by the solicitor and not proven by the witness. On a certain proven statement of facts, a non-expert might state whether the defendant was sane or insane, but is not competent to give his opinion as to the sanity or insanity of the defendant.—*Yarbrough v. The State,* 105 Ala. 43; *Bennett v. The State,* 52 Ala. 370.

The court erred in refusing to sustain defendant's objection to the following question asked by the solicitor: "Judging from the position where you saw the flashes, and the close succession of the shots, in your opinion, could one man have fired all the shots." There was no fact proven going to show that the witness Horn was an expert, and he was asked to give his opinion, as to the existence of a fact, of which the jury was as competent to judge as he.—*McKee v. State,* 82 Ala. 32; *Bennett v. State,* 52 Ala. 370.

It is the settled rule that it is not competent to prove the particulars of a previous difficulty, nor is it relevant to prove facts which are in no wise connected with the difficulty in which the killing occurred.—See *Jones v. The State,* 116 Ala. 468.

The court erred in refusing to give the following charge asked by the defendant: "The burden of the proof is not on the defendant, as to his insanity at the time he killed Cary."—See *Henson v. The State,* 112 Ala. 41; *Davis v. United States,* 160 U. S. 469.

The court erred in refusing to give the following charge asked by the defendant: "The court charges

the jury that if they have a reasonable doubt growing out of the evidence as to whether Kroell was insane or not, at the time he killed Cary, they should find the defendant not guilty."—See *Henson v. The State*, 112 Ala. 41; *Davis v. United States*, 160 U. S. 469; *Whitten v. The State*, 115 Ala. 72; *Martin v. The State*, 119 Ala. 1.

MASSEY WILSON, Attorney-General, for the State.— No brief came to the hands of the Reporter.

McCLELLAN, C. J.—The defendant's motion for a continuance was addressed to the sound discretion of the court. The action of the court upon it is not reviewable here, certainly not in the absence of a showing that the court abused its discretion in denying the motion. So far from such showing being made, the record before us would require our concurrence in the ruling of the trial court even if the matter were not one for the exercise of its discretion.

What we have just said applies also to the refusal of the court to put the State to an admission of what Doctors Searcy and Partlow would testify. On the facts disclosed the defendant had the right to take the deposition of these witnesses, but no right to their personal attendance at the trial, and he might well have taken their depositions and had them in court when the trial was entered upon, but neglected to take steps to that end in proper time.

Efforts were made at the eleventh hour to procure the depositions of these witnesses, and papers purporting to be their depositions were filed in court after the trial had been entered upon. At the State's motion these alleged depositions were properly suppressed when offered by the defendant, on the ground that they had not been taken or certified by the commissioners appointed to take and certify the depositions, or by any of them, but by a stranger to the commission.

It is no objection to this action of the court that it was not had, nor that the motion therefor was not made, before the trial was entered upon, since the depositions could not have been suppressed nor the motion to that

end been made prior to entering upon the trial for the reason that they had not then been returned into the court.

Dr. Lane, though not competent to give his opinion as an expert witness as to defendant's sanity, testified to such facts about him within his own knowledge as qualified him to express his opinion on the subject in connection with his deposition to the facts.

The fact that this testimony of Lane was drawn out before defendant offered any evidence to show insanity did not prejudice the defendant, and would not have done so had the defense offered no evidence on the subject, since in that case it would have been but redundant upon the legal presumption of sanity. As the defendant subsequently adduced such evidence, the irregularity, if such it was, was cured.

At least four shots were fired on the occasion of the homicide, all by the person or persons who assailed the deceased. There was a question on the trial whether they were all fired by one man. The evidence was that the shots were fired in quick succession, and that the gun flashes were at two or more places in the street near the place where the body was found. It would have been a difficult matter for the witnesses to get before the jury the distance in point of space between the places at which the shots or any two of them were fired. It would have been even more difficult for the witnesses to tell the jury what intervals of time elapsed between the shots. It is, indeed, practically impossible for the average man to measure with any approach to accuracy intervals of time tolled by a few seconds, to state them in terms even approximately, or to appreciate their duration when stated as so many seconds, or such part of a second, etc., etc. But one looking on at the flashes of guns at different places, noting their nearness in point of time and apparent distance apart in point of space, and hearing and noting the succession of reports, may reach a very reliable and accurate conclusion as to whether the man who fired the first shot at one point could have gone to the point where the second one was

[Kroell v. The State.]

fired in the interval of time between the two. Such a conclusion, or opinion, or collective fact, or whatever it may be most appropriately called, is the best evidence bearing on the point of inquiry that the nature of the case admits of. It is upon these considerations that we rest our concurrence in the ruling of the trial court that it was competent to ask witnesses who saw the several flashes from the guns and heard their reports whether in their opinion, judging from the positions where the flashes occurred and the close succession of the shots, one man could have fired all the shots.—*Mayberry v. State,* 107 Ala. 64, 67; Whart. Ev. § 511; Lawson's Expert Opinion Evidence, 460.

The particulars of the former difficulty between Kroell and Cary having been in part drawn out by the defendant on the cross-examination of the witness McPhail, the court did not err in allowing the State on the redirect examination of this witness to draw out such other particulars of that difficulty as he deposed to.— *Longmire v. State,* 130 Ala. 66, 68, and authorities there cited.

We need not decide whether the judges' opinion and conclusion—stated in the absence of the jury—that Dr. Gibson was not an expert, and his ruling that he could not be examined as an expert on insanity, were correct. The witness was allowed to give his opinion from what he knew of the defendant, that "he was not right," *i. c.,* in his mind, and that as an expert that he had a form of epilepsy which would sooner or later develop into insanity, and, upon cross-examination that he considered him of unsound mind at the time of the homicide. No offer was made to propound hypothetical questions to the witness, and if the defense had offered and been allowed to propound such questions, they could not have embodied any facts which he did not himself know and had deposed to, and upon which he had given his opinion as to defendant's sanity, since all the facts bearing upon the prisoner's mental state which were in evidence from any source were known to this witness and by him made the basis of the opinions which he expressed. So that had the court ruled the witness to be competent as

an expert no more could have been gotten from him in support of the plea of insanity than was in fact drawn out on his examination, and it follows that if the court was technically in error in holding the witness not to be an expert, no injury resulted to the defendant.

.Charges 1 and 2 requested by the defendant were properly refused.—*Lide v. State,* 133 Ala. 43, 64, and authorities there cited; *Porter v. State,* 135 Ala. 51; Code, § 4938.

We have discussed all exceptions reserved which are insisted on in the briefs for appellant. All other exceptions have been considered, and found to be without merit.

Affirmed.

## *Indictment for Murder.*

