# Rowlan v. The State.

### Assault with Intent to Murder.

(Decided February 3, 1916. 70 South. 953.)

1. **Assault with Intent to Murder; Evidence; Declaration of Defendant.**— It was permissible for the state to show a declaration by defendant after the shooting, made to the person assaulted, that defendant had a great mind to kill him yet.

2. **Same; Res Gestae.**—The conduct of defendant in going to a person who was shot at the time of the affray in question, immediately after it occurred, was a part of the res gestae.

[Rowlan v. The State.]

3. **Evidence; Admissions; Silence.**—Evidence of silence to be admissible, must be accompanied by proof that accused heard and understood the charges, notwithstanding silence in the face of pertinent accusation of crime partakes of the nature of a confession.

4. **Same; Opinion.**—A witness may properly testify that two pistols were fired from a house and that they sounded like a 38 and 44 Special, the rule being that where a fact cannot be reproduced and made apparent to the jury, a witness may be permitted to describe the fact according to the effect produced on his mind.

5. **Trial; Reception of Evidence; Objection.**—General objections to evidence of bad character may be overruled without error.

6. **Assault with Intent to Murder; Elements.**—The offense of an assault with intent to murder is complete if the intent is to murder the person assaulted, although the assailant may not know who it was.

7. **Charge of Court; Argumentative.**—Charges that on a trial for assault with intent to murder, the same facts which would make the offense murder if death had ensued, do not necessarily furnish sufficient evidence of the intent, and that if the jury believe that if the person assaulted had died, defendant would have been guilty of murder, it does not necessarily follow that defendant was guilty of an assault with intent to murder, were argumentative and properly refused.

APPEAL from Jefferson Criminal Court.

Heard before Hon. H. P. HEFLIN.

Jennie Rowlan, alias, etc., was convicted of an assault with intent to murder one Levi F. Clayton, and she appeals. Reversed and remanded.

When the witness Screws was being examined, the state asked him if Jennie Rowlan said anything to Mr. Clayton when she came out of the house during the shooting. Over the objection of defendant, the witness answered: "I was on the road in front of the house, and saw Jennie come out of the front door immediately after the shooting was over in the house, and she walked up to Mr. Clayton and said to him: 'Damn you; I'm a great mind to kill you yet.' "

It seems that the deputy sheriff was attempting to arrest one Sam Bains, who was in the house with the woman Jennie Rowlan, and her mother, Sue Watts, and that Sam shot from one window, and Jennie Rowlan from another, and during the shooting Bains was shot, whether killed or not does not appear. He was shot after he left the house, and it was permitted the state to show that immediately after he was shot the woman Jennie Rowlan went to him. On direct examination of the witness Screws the state's counsel asked him: "Did you accuse Jennie Rowlan of having shot Mr. Clayton after she was arrested?"

[Rowlan v. The State.]

Over the objection of defendant, he answered: "I saw Jennie in an automobile with Susan Watts, Mr. Clayton, and the body of Sam Bains several hours after she shot Mr. Clayton, and I said, 'There is the big, fat woman who shot Mr. Clayton.'"

The state's attorney asked the witness Cheshire if, in his opinion, there were two different size guns being shot from the inside of the house, and over the objection of defendant the witness testified: "There were two pistols being fired from the inside of the house, and they sounded like a 38 and a 44 special, the 38 being fired at me from the north window, and the 44 special was being fired from the south room."

The following charges were refused to defendant: (1) "I charge you, gentlemen of the jury, that on a trial for assault with intent to murder the same facts and circumstances which would make the offense murder if death had ensued, as a proposition of law, do not necessarily furnish sufficient evidence of the intention."

(2) "I charge you that, though you may believe from the evidence that, if Mr. Clayton had died from the wounds inflicted, the defendant would have been guilty of murder, it does not necessarily follow that defendant was guilty of an assault with intent to murder."

(4) Affirmative charge as to the first count.

(5) Affirmative charge as to assault with intent to murder.

(8) Direction to acquit the defendant.

(9) "I charge you, if you believe from a consideration of all the evidence that defendant fired the shot that struck Mr. Clayton, and that when she fired the said shot she was shooting at and intending to shoot some other person, then you cannot convict defendant of an assault with intent to murder."

(10) "I charge you that, unless you believe from the evidence and beyond a reasonable doubt that defendant intended to shoot Mr. Clayton, and not some other party, you cannot convict defendant of an assault with intent to murder."

The court gave charge 3, as follows: "Unless you believe from the evidence and beyond a reasonable doubt that defendant had the intention to kill Mr. Clayton in her mind at the time of the commission of the alleged assault upon him, you cannot find her guilty of an assault with intent to murder."

The court then, of his own motion, said to the jury: "I give you this charge, gentlemen, with the explanation that, if you believe she shot at some one else with the intent to kill that person, and the shot hit Mr. Clayton, she would be just as guilty as though she had been shooting at Mr. Clayton with the intent to kill him, and your verdict should be rendered accordingly."

MURPHREE & RICHARDSON, for appellant. W. L. MARTIN, Attorney General, and J. R. TATE, Solicitor, for the State.

BROWN, J.— (1) The testimony of the witness Screws as to the declaration made by the defendant to Clayton, after the shooting, was properly admitted. This declaration was in the nature of a threat, and tended to show malice on the part of the defendant.—*Maddox v. State,* 159 Ala. 53, 48 South. 689; *Harris v. State,* 177 Ala. 17, 59 South. 205; *Marks & Co. v. Hastings,* 101 Ala. 165, 13 South. 297; *Henderson v. State,* 70 Ala. 23, 45 Am. Rep. 72.

(2) The conduct of the defendant in going to Bain immediately after he was shot appears to have been the spontaneous action of the defendant and the natural outgrowth of the occurrence, and was so closely connected with the shooting as to make it a part of the res gestæ, and had some tendency to show that the defendant was acting in concert with Bains.—*Bessierre v. Alabama City, Gadsden & Attalla R. R. Co.,* 179 Ala. 330, 60 South. 82.

(3) Silence in the face of pertinent accusation of crime by the party accused partakes of the nature of a confession, and is admissible as a circumstance to be considered by the jury as tending to show guilt; but, to be admissible, it must be shown that the accused heard and understood the charge against him under circumstances calling on him for a denial, and that he was silent.—Underhill, Criminal Evidence, §§ 122-124; *Jones v. State,* 156 Ala. 175, 47 South. 100; *Brown v. Commonwealth,* 86 Va. 935, 11 S. E. 799; *Commonwealth v. Brailey,* 134 Mass. 527; *Jones v. State,* 107 Ala. 93, 18 South. 237. The statement of the witness Screws, "I saw Jennie [the accused] in an automobile with Susan Watts, Mr. Clayton, and the body of Sam Bains several hours after she shot Mr. Clayton, and I said, 'There is the big, fat woman who shot Mr. Clayton,'" is not brought under

the rule. It is not made to appear that this statement was made to or in the presence or hearing of the accused, nor is it shown that she was silent. Silence in the face of accusation is the evidentiary fact, and not the accusation. The court erred in overruling the objection to the question and the defendant's motion to exclude the answer.

(4) "The general rule is that witnesses must testify to facts, and are not permitted to express mere matters of opinion. The rule has its boundaries and exceptions, which are as well defined as the rule itself. Where a fact cannot be reproduced and made apparent to the jury, a witness may describe the fact according to the effect produced on his mind; or, if from the nature of a particular fact, better evidence is not obtainable, the opinion of a witness derived from observation is admissible."—*Mayberry v. State*, 107 Ala. 67, 18 South. 219; *Bullington v. State*, 13 Ala. App. 61, 69 South. 321. Under this exception to the general rule it was held in the case first above cited that a witness may testify that one had in his pocket an object that "bore a resemblance to the impression of a pistol." And again, on the trial of one indicted for murder, where the evidence showed that several shots were fired on the occasion of the homicide at night by the person or persons who assaulted the deceased, and where there was a question as to whether they were all fired by one man, a witness who has looked on at the flashes of the guns at different places, noting their nearness in point of time and apparent distance apart in point of space, and hearing and noting the closeness of the reports, is competent to give an opinion as to whether one man could have fired all the shots.—*Kroell v. State*, 139 Ala. 1, 36 South. 1025. And again, where one of the issues in a cause was as to the speed of a train, that a nonexpert who saw the train passing, and who on previous occasions had observed the speed of trains, could express an opinion as to the speed of a train.—*L. & N. R. R. Co. v. Stewart*, 128 Ala. 313, 29 South. 562. Again, that a witness who heard the report of a gun might testify that: "It went like a rifle."—*Fowler v. State*, 8 Ala. App. 168, 63 South. 40. In that case it was said: "The law recognizes that a rule of evidence which would confine an ordinary witness to a description of a sound sought to be proved, and prohibit his stating what the sound heard by him was, would often result in depriving the jury of

the only practicable means of ascertaining the truth on such an inquiry."

In *Kroell v. State, supra,* it was said: "Such a conclusion, or opinion, or collective fact, or whatever it may be most appropriately called, is the best evidence bearing on the point of inquiry that the nature of the case admits of."

It may be said to be a matter of common knowledge that the character and volume of the report from firing a gun or pistol is to some extent dependent upon the character and quality of powder used and the caliber or bore of the gun; and we doubt not that it is within the exception to the general rule above stated to allow a witness who has had experience in firing guns and pistols of different caliber or gauge to state that more than one were fired, and describe the sound as: "They sounded like a 38 and a 44 special." In its very nature, the fact—the sound—cannot be reproduced and made apparent to the jury; and, in order to obtain the benefit of the fact the witness must describe the fact according to the effect produced on his mind."—*Mayberry v. State, supra.* The effect of the testimony given in this case was not that the pistols used on the occasion of the assault were 38 and 44 special, but was a description of the report, leaving the question to be determined by the jury as to what character or caliber of pistol was used. The ruling of the court was well within the exception above stated, and was free from error.

(5) The defendant's general objection to the evidence of bad character was properly overruled (*Rector v. State,* 11 Ala. App. 333, 66 South. 857; *Byers v. State,* 105 Ala. 31, 16 South. 716; *Fields, Alias, etc., v. State,* 121 Ala. 16, 25 South. 726; *Sweatt v. State,* 156 Ala. 85, 47 South. 194), and we see nothing improper in the remark of the court to the witness explaining to the witness the scope of the question propounded to him.

(6, 7) While an unlawful act and a specific intent must concur to constitute the statutory offense of an assault with intent to murder, it is not essential that the intent be to murder any specific person. The offense is complete if the intent is to murder the person assaulted, although the assailant may not know who it was. The court was not in error in explaining written charge 3, nor in refusing charges 1, 2, 9, and 10.

Charges 1 and 2 were argumentative, and charges 9 and 10 were unsound.

[Kennedy v. The State.]

Under the evidence, the case, on all of its phases, was properly submitted to the jury, and charges 4, 5, and 8 were well refused.

For the error above pointed out, the judgment must be reversed, and the cause remanded.

Reversed and remanded.