Appellant was convicted of robbery and his punishment was fixed at imprisonment in the penitentiary for ten years. Throughout the trial proceedings appellant was represented by counsel of his choice and at arraignment pleaded not guilty. After sentence was imposed he gave notice of appeal, his sentence was suspended, and he is at large under a ten thousand dollar bond. Trial counsel represents him on appeal.
The evidence presented by the State tended to show that the victim of this robbery, Grover B. Smith, a seventy-three year old man, lived alone on Lake Payne in Hale County, Alabama. Between four and five o'clock on Sunday morning, February 16, 1975, Mr. Smith heard a knock on his door. He put his pants and glasses on and went to the door. He asked who was at the door and a voice replied, "It is one of the old Watkins boys." Mr. Smith found the door had already been unlocked except for the night latch and he opened the door. He was confronted by two white men. One of the men "rammed a gun" under his nose and said, "Heist them, stick `em up, this is a robbery. Where is the money?" One of the men had a moustache and both bandits wore stockings over their faces. The man who was not pointing the pistol struck Mr. Smith and knocked him onto the sofa. The bandits demanded to know where the *Page 758 
money was and the man who knocked Mr. Smith on the sofa searched the trailer while the other man held the victim at gunpoint. The search of the trailer proved fruitless and the man returned to the sofa where Mr. Smith lay and said, "Kill him, goddamn, B.B., kill him." Mr. Smith recognized the man who was talking as Woodfin Avery as he had purchased a record player from him previously. The victim did not recognize the other man addressed by Avery as "B.B." Avery took the pistol from "B.B." and threatened to "blow Smith's brains out." Avery snatched from the victim's pocket a wallet which contained four hundred and seventy-seven dollars. The bandits then picked up Mr. Smith and carried him to the bedroom, refused to let him use the bathroom, and bound his hands behind him with a cord they cut from an electric fan. They tied his feet together with a cord cut from an electric blanket. Avery then found the victim's .22 caliber pistol, worth about forty dollars, and took it also. Mr. Smith was asked if either one of the men called the other by name, and he said, "Barton didn't ever call Avery, but Avery said, `B.B.', and then `B'."
On cross-examination Mr. Smith testified the men who robbed him stayed in his trailer about twenty minutes and when he heard the men leave it took him about ten minutes to free his arms and legs from the cords. He then went to a neighbor's house and together they went to another neighbor's house and called the Sheriff. After a Deputy Sheriff arrived Mr. Smith told his neighbor, James S. Roulaine, that Woody Avery was one of the robbers and when he mentioned the other one was referred to as "B.B.", his neighbor identified the man as B.B. Barton. He further testified that Jim Roulaine's brother, "Snookie" Roulaine, told him that he was at Elam's Cafe and heard Avery and Barton making plans to rob him.
On redirect Mr. Smith was asked when was the first time he ever heard the name B.B. and he stated, "Oh, I have heard talk around the cafe there about Barton and B.B. Barton, but the first time I heard it that night was when Woody said that — said, `Kill him, B.B.'" He further stated, "That is the first time; then he said a second time when he went over there and asked him — he said, `Let me have the gun B., I will blow his goddamn brains out.'"
Mr. Wayne Middlebrooks, the head teller at Citizen Bank and Trust Company in Selma, Alabama, identified State's Exhibit 1 as a deposit document which reflected that on February 17, 1975, Judy Barton, the ex-wife of appellant, deposited to her account two hundred and ten dollars in cash. State's Exhibit 1 was admitted into evidence without objection. Mr. Middlebrooks identified Ms. Judy Barton in court as the person making the deposit which he personally handled.
On cross-examination this witness stated that Judy Barton's account was overdrawn at the time she made the two hundred and ten dollar cash deposit.
Judy Barton, appellant's ex-wife, testified that appellant and Woody Avery came to her apartment in Selma, Alabama, about six a.m. on the day of the robbery. She and the two men were the only persons present at that time. She stated appellant and Avery talked bout having robbed an old man and tied him up on his bed. They told her they wore stockings over their heads during the robbery. When they arrived at her residence, they had around $400.00 in cash which they divided in her presence. They also had a can or jar which contained some change but she did not know the total amount in change. Appellant gave her his share of the proceeds from the robbery which she deposited in her account in the Citizens Bank and Trust Company of Selma. Her account was overdrawn and she deposited the sum of $210.00 in cash on February 17, 1975, the day after the robbery.
Mrs. Barton further testified that she had several conversations with appellant before his trial in which he was trying to persuade her not to testify. Appellant offered her the use of his automobile and his vacation check if she would "just not testify." The weekend before his trial appellant asked Mrs. Barton to marry him again. *Page 759 
Mrs. Barton further testified that she was married and divorced from appellant on two occasions and had three children by him. She said that her former husband, Bennie B. Barton, was known to his friends as "B.B."
Mrs. Barton was subjected to a thorough, vigorous, and searching cross-examination by defense counsel but she never wavered in her testimony that appellant and Woody Avery came to her apartment shortly after the robbery and talked about having robbed an old man. She maintained that both men stated they robbed the old man while they were disguised with stockings over their heads and that after the robbery they put him on the bed and bound his hands and legs together. Mrs. Barton was unable to recall which statements were made by appellant and which statements were made by Avery; however, she was positive that the entire conversation took place in the presence of appellant. She stated that at some point in the conversation appellant might have gone to the bathroom but she was not sure that he ever left the room.
She further testified that she had been to Hillcrest on two occasions where she received group therapy and medication for her nerves and migraine headaches; that on one occasion she had herself admitted to Bryce Hospital but was released two hours later. She also admitted that she had attempted to take her life on two occasions.
She admitted she had made an agreement with the District Attorney to testify against her ex-husband in exchange for two years probation on a charge of buying, receiving or concealing stolen property. She stated she would do anything to avoid going to prison. She also admitted that she had run afoul of the law for writing numerous worthless checks.
Because of Mrs. Barton's entanglements with the authorities her three children had been taken from her and placed in a foster home.
Appellant presented the testimony of Mr. Smith's neighbor, Jim Roulaine, and the investigating officer who both stated that Smith did not tell them he had recognized Avery or that Avery addressed his companion as "B.B." Roulaine testified that he did not tell Smith "B.B." was Bennie Barton. The neighbor testified Smith told him he did not recognize either robber because of the stockings over their heads and did not recognize their voices because he had a hearing problem and the men mumbled. Appellant further presented evidence that the night before the robbery he took his brother to the Veterans Hospital in Tuscaloosa and returned to his mother's home in Marion, where he went to sleep. His mother testified that Woody Avery came to the house around 5:00 a.m. and that the two men then went to the home of Judy Barton. Appellant testified that he told his ex-wife that he was involved in the robbery but that this statement was not true. He did not deny the conversation which took place in her home but testified that Avery was merely telling him about a robbery he had been involved in. He testified that part of the money which he have Judy Barton had been given to him by his mother and that the rest of it came from his pay check which he received the previous Friday.
Appellant contends the trial court erred in allowing the introduction of evidence of charges against him on an unrelated prior offense. On cross-examination of Judy Barton, defense counsel asked her if she and Woody Avery had been charged for buying, receiving or concealing stolen property, to which she responded in the affirmative. On redirect examination, the following question was asked:
 "Q. All right, Mrs. Barton, you were asked some time during this long cross-examination if Woody Avery was charged with buying, receiving and concealing stolen property in Hale County along with you, is that right?
"A. Yes.
"Q. Was Bennie Barton charged along with you too?
"A. Yes."
Appellant's objection and motion to exclude this testimony were overruled. Following arguments by counsel, a motion for *Page 760 
mistrial was denied. The trial court ruled that the jury had been misled by the question on cross-examination and that the District Attorney would be allowed to clear this issue upon redirect since the door had been opened by defense counsel. This ruling was within the discretion of the trial court. On redirect examination the State may examine a witness as to any matter injected into the case on cross-examination by defense counsel. Chatom v.State, Ala.Cr.App., 360 So.2d 1068 and cases cited.
Appellant also contends that certain questions asked by the State on cross-examination of appellant's character witnesses were improper and necessitate a reversal. A careful review of the examination of these character witnesses reveals that all questions challenged on appeal by appellant were answered in the negative. A negative answer to a question asked on cross-examination even though the question itself was improper cannot result in harm to the appellant. Hurst v. State,54 Ala. App. 254, 302 So.2d 62.
Appellant contends that Judy Barton's testimony as to the conversation which took place in her home the morning of the robbery was inadmissible against the appellant. Although the witness could not remember who made the statements, they were shown to have been made following the commission of the crime in the presence of appellant and were not denied by him. Such statements made by a confederate have been held to be admissible in evidence against an accused under the rule of tacit admissions. Eaton v. State, 280 Ala. 659, 197 So.2d 761; Burns v.State, 226 Ala. 117, 145 So. 436; Munson v. State, 250 Ala. 94,33 So.2d 463. While this rule has been the subject of much criticism, and has been repudiated by some jurisdictions, it remains the rule in this state. The rule, however, is to be applied strictly and it must be shown by the proponent of the evidence that the accused heard and understood and had an opportunity to deny an accusatory statement, under circumstances calling for a reply, before any tacit admission emanating from his silence can be used against him. Caldwell v. State, 282 Ala. 713, 213 So.2d 919.
In the instant case appellant and Woody Avery arrived at the home of appellant's ex-wife shortly after the robbery and, according to her testimony, both men described with specificity how they had robbed an "old man." Appellant even admitted at trial that he had told his ex-wife he was involve in the robbery, although he denied that he was telling the truth. The test for admissibility of a tacit admission under Caldwell, supra, was sufficiently met.
Finally, appellant contends the trial court erred in allowing the jury to separate during the trial. The record shows that counsel for the State and for appellant were asked if there were any objections to the jury separating overnight. Both sides responded that there were no objections. Although the record does not reveal that appellant himself consented to the separation, nowhere throughout the record of the proceedings below was any objection made by appellant to the separation of the jury, and separation was not a ground put forth in the motion for new trial. In the absence of an objection in the record to the trial court allowing the jury to separate during the trial or a motion for mistrial or a new trial on those grounds, the matter is not before this court. The question was not presented to the trial judge for his ruling. Arnold v. State, Ala.Cr.App.,340 So.2d 873, cert. denied, Ala., 340 So.2d 877. This question cannot be raised first on appeal. Turner v. State, 54 Ala. App. 467,309 So.2d 503.
A careful review of the record reveals no errors prejudicial to the substantial rights of the appellant. The conviction is affirmed.
AFFIRMED.
TYSON, DeCARLO and BOWEN, JJ., concur. *Page 761