This cause was initiated on October 21, 1981, by Plaintiff/Appellee David W. Griffith, against Defendant Donald Watts and Defendants/Appellants Jim Acreman, and Paul Stahlman. Griffith alleged negligence and wantonness in that Defendants knowingly allowed Plaintiff to operate a 1973 model truck with an unsafe steering mechanism.
Defendant Donald Watts answered Plaintiff's complaint and filed a cross-claim against Defendants Acreman and Stahlman. Defendants Acreman and Stahlman filed an answer to the initial complaint and to Watt's cross-claim. Acreman and Stahlman next cross-claimed against Watts.
The jury returned a verdict in favor of the Plaintiff against two of the Defendants, Acreman and Stahlman,[1] and assessed damages at $100,000. Additionally, the jury found in favor of Defendant Donald Watts against cross-claimants Acreman and Stahlman.
From the order denying motions for a new trial, Stahlman and Acreman appeal. We reverse.
 FACTS
Because of our remand of this cause for a new trial, we will not give a detailed account of the evidence; rather, we deem it appropriate to recite only so many of the facts, by way of overview, as relate to the credibility-of-the-witness issue, on which we base our reversal.
Plaintiff David W. Griffith is a 25-year-old sawmill worker. On October 22, 1980, the day of the accident here in question, Plaintiff was employed by Empire Gas Company of Butler, Alabama, as a deliveryman. Empire Gas maintained, for its deliveries, a 1979 Chevrolet truck. The company also used a 1973 Chevrolet truck as a backup vehicle.
According to Plaintiff, on October 22, 1980, he was instructed by his immediate supervisor, Donald Watts, to make a delivery to Livingston, Alabama. Because of mechanical problems, the only vehicle then available was the 1973 truck, which, as Plaintiff was aware, had experienced earlier mechanical malfunctions. Upon expressing to Watts his reservations about using the 1973 vehicle, Plaintiff was told by Watts "to make the delivery or lose your job."
Approaching a bridge on his return trip to Butler, Plaintiff's vehicle hit a rough area in the road and went out of control, causing Plaintiff personal injuries. *Page 289 
Donald Watts testified that, on October 22, 1980, before Plaintiff made the trip involved here, upon hearing from Plaintiff about the problems with the 1973 Chevrolet, he contacted his supervisor, Paul Stahlman, who told him to "either drive it or get someone else that will." Watts also testified that, prior to Plaintiff's accident on October 22, 1980, he had spoken to Empire's regional sales manager, Jim Acreman, who told him to see Paul Stahlman about the truck's condition. Jim Acreman's responsibilities included assisting each retail manager in sales, picking up motor fuel accounts, and various other aspects of selling propane gas, excluding domestic accounts.
 ISSUE
Multiple issues are presented for our review. We need only to address, however, the single issue on which we base our order of reversal: Did the trial judge err in excluding evidence proffered by the Defendants on cross-examination that witness Watts had been convicted for the misdemeanor offense of theft in the second degree, as a crime involving moral turpitude? We hold that he did.
 DECISION
During the course of cross-examination of the Defendant Donald Watts, Appellants' lawyer attempted to elicit from the witness evidence pertaining to Watt's prior termination of employment with Empire Gas Company of Butler, Alabama, and evidence of Watts's plea of guilty to "attempted" theft in the second degree. Pertinent portions of this testimony read as follows:
"MR. KISER [for the Defendants]:
 "Q. . . . Mr. Watts, what was the occasion for you leaving . . . Empire Gas, Inc., of Butler?
"MR. THOMPSON [for the Plaintiff]:
 "Judge, I object to that. That's immaterial and irrelevant and has no bearing whatsoever.
". . . .
"THE COURT [After excusing the jury]:
 "Let me hear your argument on this. You'll want to ask him why he was terminated. There was an objection made. We're outside the presence of the Jury.
"MR. KISER:
 "Judge, what we're getting into is the guilty plea made by Mr. Watts to . . . [a]ttempted theft of property in the 2nd degree. . . .
"MR. UTSEY [for the Plaintiff]:
"Is that a misdemeanor?
"MR. TRAEGER [for the Defendants]:
Involving moral turpitude.
"MR. KISER:
 "It does not matter, misdemeanor or felony, you can have both involving crimes of moral turpitude. It's our position grand larceny, petty larceny are crimes involving moral turpitude. And we have the right to examine Mr. Watts regarding that to impeach his credibility to the Jury.
". . . .
"THE COURT:
 "I am not going to allow you to show the conviction as a crime of moral turpitude, in that it is my opinion that an attempt does not fall within the statute of a crime involving moral turpitude, when it's an attempted theft of property in the second degree, which is a misdemeanor theft. I think it's clear it would be moral turpitude if it was a theft. It's my opinion a mere attempt does not involve moral turpitude."
Appellants argue: 1) A witness may be impeached by proving his conviction of a crime involving moral turpitude. Code 1975, § 12-21-162; 2) "Attempted" theft of property in the second degree is a misdemeanor involving moral turpitude, and thus the trial court erred in refusing to allow them to introduce evidence of witness Watts's plea of guilty to the crime of "attempted" theft of property in the second degree in order to impeach his testimony.
In McElroy's Alabama Evidence, § 145.01 et seq. (3d ed. C. Gamble 1977), we find the following pertinent language: *Page 290 
"(1) General statutory rule
 "We observed earlier that a witness is impeached by showing his general bad reputation as a whole or for truth and veracity and that specific bad acts of the witness are excluded for impeachment purposes. An exception to this latter rule, however, is that an opponent can impeach his adversary's witness by proving his former conviction of a crime involving moral turpitude. This ground of impeachment is explicitly given by statute.
". . . .
"(7) Moral Turpitude defined
 "The Supreme Court of Alabama has defined the term `moral turpitude' on many occasions and the following are the most commonly found definitions. Moral turpitude signifies an inherent quality of baseness, vileness and depravity. It is immoral in itself, regardless of the fact that it is punished by law. Therefore, an offense for conviction of which a witness' credibility is lessened must be mala in se
and not mala prohibitum.
 "In commenting upon the advent of the test of moral turpitude and its difficulty of application, an authority in the area of evidence has observed: `Thus does the serpent of uncertainty crawl into the Eden of trial administration.' Most states using the rule have established a catalog of crimes which involve moral turpitude and the prior conviction of which is admissible for impeachment purposes. . . . With respect to a crime whose quality as containing moral turpitude is in question, and about which the appellate courts have not yet spoken, it is readily apparent that any appellate court decision will turn upon the moral standards of the judges who decide the question.
 "(8) Whether the conviction offered for impeachment is a felony or misdemeanor is not the test
 "Any conclusion that all felonies involve moral turpitude, while all misdemeanors do not, must be regarded as founded in error. A determination of whether the conviction offered for impeachment purposes is for a felony or misdemeanor does not necessarily answer the question of whether the crime for which the witness was convicted involves moral turpitude.
 "While most felonies do involve moral turpitude there are some which do not. For example, the felony of grand larceny has been held to involve moral turpitude while that of distilling whiskey has not.
 "On the other hand some misdemeanors involve moral turpitude while others do not. The misdemeanor of petit larceny has been held to involve moral turpitude while that of assault and battery has been declared not to carry the stigma of involving moral turpitude." (Emphasis added. Footnotes omitted.)
For additional cases holding that petit larceny involves moral turpitude, see Caldwell v. State, 282 Ala. 713,213 So.2d 919 (1968); Payne v. State, 261 Ala. 397, 74 So.2d 630 (1954);McFarling v. State, 35 Ala. App. 191, 45 So.2d 322 (1950);Hutchens v. State, 207 Ala. 126, 92 So. 409 (1922).
Larceny (now theft) is the felonious taking and carrying away of the personal property of another with the intent on the part of the taker to deprive the owner of possession thereof, or to convert it to the use of the taker. Wilcox v. State,401 So.2d 789 (Ala.Cr.App. 1980). Theft of property in the second degree is a Class C felony. Code 1975, § 13A-8-4 (1982 Repl. Vol.). "Attempted" theft of property in the second degree is a Class A misdemeanor. Code 1975, § 13A-4-2 (d)(4) (1982 Repl. Vol.). Stated succinctly, the issue for our determination is whether "attempted" theft of property in the second degree is a crime involving moral turpitude; if so, the trial court's refusal to admit the proffered evidence constituted reversible error. We think that it is.
Given the settled law that a conviction for the misdemeanor offense of theft is a crime involving moral turpitude, we are unable to perceive a material difference, for impeachment purposes, where the conviction is for the lesser offense of *Page 291 attempted theft. It is not the class of the crime, as that crime is legally defined, but its nature and character that form the basis for the test of its admissibility. The moral baseness of the act is not lessened by the fact that the theft wasattempted as opposed to being completed. The element of intent is present to the same degree in both.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.
[1] Defendant Donald Watts is not a party to this appeal.