JAMES H. FAULKNER, Retired Justice.
Cleveland Ed George was indicted for the offense of unlawful distribution of a controlled substance in violation of § 13A-12-211, Code of Alabama 1975. The jury found George guilty as charged in the indictment, and he was sentenced to two years in the penitentiary plus an additional five years because the sale of a controlled substance occurred within three miles of a school. See § 13A-12-250. Four issues are raised on appeal.
I
George contends that the trial court erred by denying his motion in limine, which sought to prevent his prior misdemeanor conviction of attempted sexual abuse from being introduced for impeachment purposes.
“The denial of a motion in limine cannot in and of itself rise to the level of reversible error.” White v. State, 527 So.2d 1349, 1350 (Ala.Cr.App.1988).
“[A]n appellant who suffers an adverse ruling on a motion to exclude evidence ..., made in limine, preserves this adverse ruling for post-judgment and appellate review only if he objects to the introduction of the proffered evidence or other matters and assigns specific grounds therefor at the time of trial, unless he has obtained express acquiescence of the trial judge that such subsequent objection to evidence proffered at trial and assignment of grounds therefor are not necessary.”
Liberty National Life Ins. Co. v. Beasley, 466 So.2d 935, 936 (Ala.1985).
George failed to object at trial to the introduction of the evidence of his prior conviction and makes no mention of an express acquiescence of the trial judge that subsequent objections to the proffered evidence were unnecessary. Hence, George has waived this issue.
Even if this issue had been properly preserved, we note that the trial court properly denied George’s motion in limine because the underlying offense of the prior conviction was a crime of moral turpitude which could properly have been used to impeach George. See Raines v. State, 455 So.2d 967 (Ala.Cr.App.1984) (sexual crimes are crimes of moral turpitude) and Stahlman v. Griffith, 456 So.2d 287 (Ala.1984) (the *1052 moral baseness of the act is not lessened by the fact that the act was attempted as opposed to completed).
II
George contends that comments in the prosecutor’s closing argument alluding to the identity of an informant should have been excluded, because no evidence of the informant's identity was brought forth during the trial.
During closing argument by the prosecutor, the following occurred:
“We have had mama come in and testify. Mama has not been in here, and yet, for some reason she knew enough about what was going on from some source— and you can make up your mind from what source — to go and ask that man ‘Have you seen Cheryl Tucker lately?’ Where did she get that from? She knew who was living over there. And she knew that he knew who was there and she knew who put that undercover officer onto her son.
“MR. SHOTTS [defense counsel]: I’m going to object to that. That is absolutely not in evidence.
“MR. MAHON [prosecutor]: It is a clear inference from the testimony in this case. “THE COURT: I have let both of you run off. You have two more minutes, Mr. Mahon.
[[Image here]]
“[Mr. Mahon] Now, I asked who the informant was and he objected. He doesn’t want you to know. But you know who the informant was and so does mama. Everybody knows. I asked have you seen her lately — object. She turned him in.
“MR. SHOTTS: Your Honor, I object to that. It’s not in evidence.
“THE COURT: What is that?
“MR. SHOTTS: That she turned him in. “THE COURT: That’s Mr. Mahon talking. I keep telling the jury what both of y’all say is just talk.”
Because the trial court did not rule on defense counsel’s objections to the above-quoted portion of the prosecutor’s closing argument, this issue has not been properly preserved for appellate review. “Review on appeal is limited to matters on which rulings are invoked at the trial level.” Cross v. State, 536 So.2d 155, 158 (Ala.Cr.App.1988).
We note that even if this issue had been properly preserved, the prosecutor’s comment as to the identity of the informant was a permissible inference from the evidence presented, and a curative instruction was given by the trial court. Moore v. State, 457 So.2d 981 (Ala.Cr.App.1984) cert. denied, 470 U.S. 1058, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985).
Ill
George contends that the prosecutor should not have been allowed to cross-examine George’s mother because the testimony was hearsay and it was prejudicial, inflammatory, collateral, and immaterial.
During defense counsel’s direct examination of George’s mother, Mrs. George testified that she did not attend the proceedings when her son pleaded guilty to attempted sexual abuse. During cross-examination of Mrs. George, the prosecutor asked her what she had said to Officer Jeff Shelton, the undercover officer who had purchased the marijuana from her son, “yesterday in the coffee room of the courthouse.”
Defense counsel objected to this question, and the court removed the jury from the courtroom. The prosecutor then resumed his cross-examination of Mrs. George, outside the jury’s presence, and the following occurred:
“Q. [By Mr. Mahon, the prosecutor] Do you remember what you said?
“A. I asked him if he had seen Cheryl Tucker lately or when was the last time that he had seen her.
“Q. What did he say?
“A. He said he hadn’t seen her in some time.
“Q. What did you say?
“A. I said well, when he saw her again to give her my regards.
“Q. Then what did he say? Didn’t he at that point ask you who you were?
*1053 “A. Yes. And I told him I was Carolyn George.
“Q. Then what did you say?
“A. He asked me if I was his sister or his mother or who I was, and I told him I was Eddie’s mother.
“Q. Then what did you say?
“A. I don’t remember.
“Q. Something about every dog having his day?
“A. I don’t remember. No, sir, I did not say that.
“Q. What was it that you did say?
“A. I told him that he was trying to ruin my son’s life and what goes around comes around.
“MR. MAHON: That’s what I want to ask her about.
“THE COURT: Why did you say anything to a witness in here?
“A. I thought that he was through with the court. I just — I guess my motherly instincts — I thought he was through with his testimony.
“THE COURT: Even if he was through, you didn’t have a right to tacitly threaten him. That’s what you were doing.
“A. Like I say, he’s falsely accused my son.
“THE COURT: That’s for the jury to decide that. You don’t have the right to threaten any witness and promise any repercussions to any witness as a result of them testifying and participating in the judicial process.
“MR. MAHON: I would offer that to show bias and prejudice of this witness, and I believe I am entitled to do that.
“MR. SHOTTS: Judge, I don’t think that has any relevance. The only thing that has for a prejudicial nature to show — to inflame the jury. Mr. George has not testified as to any material fact.
[[Image here]]
“MR. MAHON: She also testified that yes, she was aware that he got into trouble earlier and she didn’t come to those proceedings where he was charged with sexually abusing a four-year-old child, and now she’s here. And she sets herself up as I let that happen, and that’s okay, but now I am here to represent him. I didn’t come to the other one, but now I am here, and at their request she sets herself up as a mother who would not support him when he was wrong but will support him when he is right, and I am entitled to show them that she is prejudiced and that she has threatened that witness. They have set her up as someone who would not support him when he was wrong, but will support him when he’s right.”
The trial court ruled that Mrs. George had cloaked herself in righteousness by attending the trial when she did not attend the attempted sexual abuse trial wherein her son pleaded guilty. The court then allowed the prosecutor to cross-examine Mrs. George in the jury’s presence concerning what she told Officer Shelton in the coffee room, because this testimony was relevant to show the bias and prejudice of Mrs. George.
“It is always competent on cross-examination to make such interrogation of a witness as would tend to test his interest, bias or prejudice or to illustrate or impeach the accuracy of his testimony.” Housing Authority of City of Decatur v. Decatur Land Co., 258 Ala. 607, 612, 64 So.2d 594, 598 (1953).
“The extent of cross-examination on irrelevant facts, for the purpose of testing bias or credibility of the witness’s testimony, is a matter resting largely in the discretion of the trial court, and its ruling will not be disturbed unless it appears that it has abused its discretion to the prejudice of the complaining party.” Beavers v. State, 565 So.2d 688, 689-90 (Ala.Cr.App.1990).
Where George’s mother cloaked herself in righteousness, vouching for the innocence of her son, the prosecutor was properly allowed to cross-examine George’s mother concerning her threat to another witness to show her bias and prejudice. The trial court therefore did not abuse its discretion in allowing that cross-examina *1054 tion. Jones v. State, 531 So.2d 1251 (Ala.Cr.App.1988).
IV
George contends that the trial court improperly imposed the additional five-year penalty because there was no evidence at trial that the sale occurred within three miles of a school. We disagree.
Section 13A-12-250, Code of Alabama 1975, imposes an additional five-year penalty for the sale of a controlled substance “within a three-mile radius of the campus boundaries of any public or private school, college, university or other educational institution in this state.”
Officer Shelton testified that the sale of marijuana took place at George’s apartment, which was across the street from Jefferson State University. Donald Henry testified that George’s apartment complex was near Jefferson State. Nicole Brown testified that Jefferson State University was directly across the street from George’s apartment complex, a distance of about 20 yards. George himself testified that his apartment was approximately one-half mile from Jefferson State University.
Because ample evidence was produced by the prosecution to show that the sale of marijuana took place within three miles of a university, the trial court properly imposed the additional five-year penalty.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.