Yerania Martell DELUCA, Plaintiff,

v.

John ASHCROFT, et al., Defendants.

No. CV–01–A–380–N.

United States District Court,
M.D. Alabama,
Northern Division.

May 16, 2002.

Ben E. Bruner, Montgomery, AL, for Plaintiff.

R. Randolph Neeley, Montgomery, AL, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ALBRITTON, Chief Judge.

## I. INTRODUCTION

Yerania Martell DeLuca ("DeLuca") is a 24 year old citizen of Mexico who has been living in the United States since April 25, 1994 as a permanent resident. On September 2, 1998, DeLuca applied for naturalization with the Immigration and Naturalization Service ("INS"). The application was denied by the INS on August 7, 2000. DeLuca appealed and received a review hearing with the INS on October 10, 2000. Following the hearing, the INS upheld the denial of naturalization on October 13. Pursuant to 8 U.S.C. §§ 1447(a) and 1421(c), DeLuca then filed this action on April 2, 2001, requesting a review of the INS' rulings. According to § 1421(c), the court reviews the case de novo.

Trial was held on May 13, 2002. Based on the testimony of witnesses, documents admitted into evidence, and briefs and argument of counsel, the court makes the following Findings of Facts and Conclusions of Law.

## II. FINDINGS OF FACT

Deluca's application was denied by the INS on the basis that DeLuca lacked the requisite good moral character to become a naturalized U.S. citizen. The INS based this conclusion primarily on a shoplifting incident involving DeLuca in 1997. After reviewing the facts surrounding this incident de novo, the court finds the following facts to be true.

In November of 1997 DeLuca was employed as a sales associate at J.C. Penney in Montgomery, Alabama. Prior to November 23, DeLuca's roommate, Sandi Hedge ("Hedge"), had explained to DeLuca that she and her family were very poor and that she wanted to give some gifts to her family members to cheer them up. DeLuca felt sorry for them and agreed to help her obtain some gifts. DeLuca agreed to use her position at the J.C. Penney store to accomplish this. On November 23, 1997, Hedge came to the J.C. Penney store while DeLuca was working. After collecting a large amount of clothing, Hedge brought the clothes to DeLuca and DeLuca pretended to ring them up. Instead of ringing them up, DeLuca just placed the clothes in a bag and allowed Hedge to leave without paying for the items. After Hedge left the store, J.C. Penney security immediately approached DeLuca. DeLuca admitted her actions immediately upon interrogation and promised to get the clothes back. Despite this promise, J.C. Penney insisted that it would press charges. DeLuca thus wrote a confession, which she signed and attested that she was under no pressure from J.C. Penney to do so. After returning the clothes, the following day DeLuca was arrested and charged with theft of property in the second degree pursuant to Code of Ala-

bama, § 13A–8–4. Petitioner's case never came to trial, however, as DeLuca was adjudicated a youthful offender on April 28, 1998. Despite the fact that the case never came to trial, the court finds as a fact that DeLuca admitted to the commission of the crime of theft of property in the second degree.

The court also finds as a fact that DeLuca, in her written Application for Naturalization, failed to disclose the above shoplifting incident when responding "No" to the question as to whether she had "been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance excluding traffic regulation[.]" Question 15(b), Yerania Martell DeLuca Application for Naturalization.

The court also finds that the Petitioner had only been a permanent resident of the United States for four years when she attested on the Application for Naturalization that she had "been a permanent resident for at least five years." *Id.* at Part 2 (DeLuca became a permanent resident April 25, 1994 and filed her application September 2, 1998). Furthermore, the court finds that DeLuca also inaccurately attested that she met the requirements for eligibility for naturalization based on her military service. *Id.* See 8 C.F.R § 328 (must have three years military service, DeLuca began military service February 5, 1997).

Having found no other relevant facts relating to the good moral character or lack thereof of the Petitioner during the statutory period, the court makes its conclusions of law based on these findings.

### III. CONCLUSIONS OF LAW

According to 8 U.S.C. § 1421(c), this court has the authority to review and decide de novo the petitioner's Application for Naturalization.

■ In proceeding for naturalization, because the applicant is seeking to receive all the privileges and benefits of citizenship which cannot lightly be taken away, "it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect." *Berenyi v. District Director, INS,* 385 U.S. 630, 637, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967). "No alien has the slightest right to naturalization unless all statutory requirements are complied with . . . ." *U.S. v. Ginsberg,* 243 U.S. 472, 475, 37 S.Ct. 422, 61 L.Ed. 853 (1917). Thus, in reviewing the application, this court must strictly comply with all of the congressionally imposed prerequisites to the acquisition of citizenship.[1] *See Fedorenko v. U.S.,* 449 U.S. 490, 506, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981).

■ The "congressionally imposed prerequisites" for naturalization are found generally in 8 U.S.C. § 1427(a), which provides:

No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) . . . has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years . . . , (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character . . . .

DeLuca was denied naturalization by the INS because DeLuca failed to establish

---

1. Congress is granted the power to "establish an uniform Rule of Naturalization" by the Constitution. Article I, § 8, cl. 4.

good moral character as required by § 1427(a)(3). The definition of "good moral character" relevant to this proceeding is found by cross referencing 8 U.S.C. §§ 1101(f) and 1182(a)(2)(A)(i). These statutory provisions provide that an applicant shall not be found to be a person of good moral character if the applicant was "convicted of, or admits having committed . . . a crime involving moral turpitude . . ." during the statutory five years prior to the application. 8 U.S.C. § 1182(a)(2)(A)(i) *cross referencing* § 1101(f) and § 1427(a).[2] Based upon these statutes, the INS issued a regulation regarding the finding of good moral character for naturalization purposes. *See* 8 C.F.R. § 316.10. After reviewing the statutory language and the regulation, the court finds that 8 C.F.R. § 316.10 is a fair interpretation of Congress' intentions. *See U.S. v. Kiang*, 175 F.Supp.2d 942, 949 (E.D.Mich.2001) (also finding 316.10 to be a fair interpretation). Consistent with that finding, Regulation 316.10 is not "arbitrary, capricious, or manifestly contrary" to the statutory language and thus the court must defer to the INS' interpretation of the law. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Regulation 316.10 thus provides that an applicant "shall be found to lack good moral character" if the applicant has committed or admits to a crime involving moral turpitude in the statutory period prior to the application. If an applicant is found to lack good moral character then the applicant cannot be naturalized. 8 U.S.C. § 1447(a). Consequently, despite DeLuca's contentions to the contrary, a crime involving moral turpitude is a bar to a finding of good moral character and it is not within the court's

authority to decide otherwise. *See* 8 C.F.R. 316.10; *U.S. v. Vlamakis*, No. 01-C-2396, 2002 WL 230909 at *4 (N.D.Ill. February 15, 2002).

▆▆▆ The court, having found that DeLuca admitted to theft in the second degree less than a year before the application, must now decide whether this crime is a crime involving moral turpitude. Moral turpitude is generally referred to as "[c]onduct that is contrary to justice, honesty, or morality." Black's Law Dictionary 1026 (7th Ed.1999). Theft has long been found to be a crime of moral turpitude. *See e.g. Chiaramonte v. INS*, 626 F.2d 1093, 1097 (2d. Cir.1980). Outside of the general nature of the crime, the court must also look at the statutory definition of the crime in order to determine moral turpitude. *Okoro v. INS*, 125 F.3d 920, 926 (5th Cir.1997). Section 13A–8–4, Code of Alabama is entitled "Theft of property in the second degree". There is no difference between this theft of property and any other theft of property under Alabama law except for the amount of property taken. Because Alabama also views theft to be a crime involving moral turpitude, this court finds that the crime admitted by DeLuca is a crime involving moral turpitude. *See Stahlman v. Griffith*, 456 So.2d 287, 290 (Ala.1984) (misdemeanor theft is crime of moral turpitude).

DeLuca contends that she did not commit this crime, only that she aided or abetted the real perpetrator. She also contends that she was never convicted of the crime because she was adjudicated as a youthful offender. The petitioner may view her actions in this way, but it does not change the fact that, convicted or not, she admitted to the crime.[3] That is all the

---

2. These statutory provisions are based on the Immigration and Nationality Act of 1952, Section 212.

3. DeLuca further contends that she did not admit to all of the elements of the crime for which she was charged. The court is satisfied that DeLuca has admitted to the elements of

statutes require. Further, the court finds the facts adequate to support a conviction of this crime due to DeLuca's confession which espouses a clear intention on her part to help Hedges steal the clothes. The fact that DeLuca did not intend to use the clothes herself is irrelevant. The court therefore finds that DeLuca committed a crime involving moral turpitude within the statutory five years prior to naturalization. According to 8 C.F.R. § 316.10 and the relevant statutes, the court therefore cannot find that DeLuca possesses good moral character. DeLuca therefore does not meet the requirements of 8 U.S.C. § 1447(a)(3). The INS properly denied DeLuca's request for naturalization as she cannot meet the statutory requirements and the court has no authority to rule otherwise. *See INS v. Pangilinan,* 486 U.S. 875, 884, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988).

In addition to the ground on which the INS denied the application, the court has also considered evidence relating to inaccuracies in DeLuca's Application for Naturalization.

DeLuca answered "NO" to question 15(b) which asked if she had ever "been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance excluding traffic regulations[.]" Question 15(b), Yerania Martell DeLuca Application for Naturalization. At trial, DeLuca contended that she believed that she was entitled to answer "No" to this question because she had been adjudicated as a youthful offender. This does not change the inaccuracy of the answer. However, after a consideration of the testimony at trial, the court finds DeLuca's explanation to be truthful and therefore finds that DeLuca did not intentionally attempt to deceive the INS in

her answer to this question.[4] The court therefore finds no evidence of bad moral character with respect to this inaccuracy.

DeLuca also checked boxes representing to the INS that she had lived in the United States for five years and qualified for the military service eligibility exception. Application of DeLuca, Part 2. Both of these check marks were false. When asked about these misstatements at trial, DeLuca offered no response other than to submit to the court documents indicating that the INS had waived these problems with the application. While this does not alleviate the fact that DeLuca attested to these factors untruthfully, the court finds no evidence of bad faith on the part of DeLuca. The government has also made no contention in this case that DeLuca checked these boxes in an attempt to deceive the government. The court therefore finds no further evidence of bad character in this respect.

■ Although the court may further deny citizenship on the basis of untruthful representations to the INS, the court declines to do so in this case. *See Islam v. Harrington,* No. 3:00–CV–1683–P, 2001 WL 1335851 (N.D.Tex., Oct. 23, 2001); *see also Chaunt v. U.S.,* 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960). The court is satisfied that DeLuca had no intention of deceiving the INS in the submission of her application.

Despite the court's conclusion that DeLuca did not intentionally submit false information to the INS in an attempt to gain citizenship, the court reiterates that DeLuca must satisfy all of the congressionally mandated statutory requirements for naturalization. Even though the court is convinced that DeLuca is remorseful for her

---

the crime of theft of property, and that she actually committed theft of property.

4. When asked specifically in her interview about the answer to this question, DeLuca admitted to the crime.

mistake, the court finds that because of the crime involving moral turpitude, DeLuca can not satisfy 8 U.S.C. § 1427(a)(3) at this time.[5] The court therefore must deny DeLuca's Application for Naturalization.

The court in no way intends this opinion to be a future bar to Mrs. DeLuca's naturalization. Mrs. DeLuca demonstrated to the court complete acceptance of responsibility and remorse for her previous mistake. The court was most favorably impressed by her testimony and by the strong testimony supporting her good moral character given by her superiors while she was in the Air Force stationed at Maxwell Air Force Base here in Montgomery. With knowledge of the criminal matter, which happened while she was at Maxwell, they gave ringing endorsements for her as a candidate for citizenship. Based upon this and the fact that Mrs. DeLuca has no other blemishes regarding her moral character, the court believes that she would be an excellent candidate for naturalization upon her re-application after the expiration of the statutory period.

## IV. CONCLUSION

Based upon the findings of fact and conclusions of law contained in this opinion, the court finds that the Application for the Naturalization of Yerania Martell DeLuca is due to be DENIED. Mrs. DeLuca may reapply for naturalization upon the expiration of five years from the date of the commission of the crime involving moral turpitude, and it is the hope of this court that her application will then be granted and that she will be welcomed as a new citizen of our country.

Judgement will be entered by separate order..

---

5. While DeLuca technically did not satisfy the residency requirement of 8 U.S.C. 1427(a)(1) at the time of her application, the court waives this as a basis for denial of citizenship as DeLuca satisfies those requirements at this time.

## ORDER AND JUDGMENT

In accordance with the Findings of Fact and Conclusions of Law entered on this day, it is hereby CONSIDERED, ORDERED and ADJUDGED that the Plaintiff, Yerania Martell DeLuca's Application for Naturalization is DENIED, without prejudice to reapplication at the appropriate time.

Costs are taxed against the Plaintiff.